This case involves a custody dispute over Elizabeth Wilson, now age eight, between her mother, Debra Wilson, and her maternal great aunt, Jeralyn Hurley. Hurley appeals from an order of the Miami County Common Pleas Court, Juvenile Division, returning Elizabeth to the custody of her mother. Hurley asserts that the trial court erred in failing to consider the best interest of the child, under R.C. 3109.04(B). We see no abuse of discretion in the court's order, however. The trial court found that Hurley had held only temporary custody of Elizabeth before the natural mother sought to regain custody, and that finding was supported by sufficient evidence. In an action in the juvenile court, under R.C. 2151.23, between a parent and a non parent, if the natural parent has not already relinquished legal custody, she will be awarded custody unless she is found to be unsuitable. In rePerales (1977), 52 Ohio St.2d 89, syllabus. Thus, because the trial court applied the proper standard in determining the outcome of this custody suit, we affirm.
 I.
The facts of the case are as follows. Debra Wilson gave birth to Elizabeth on July 29, 1990. At that time, Debra resided with her father, Richard Brown in his Piqua home. After the baby was born, child and mother lived with Brown until early 1992. Then, Debra Wilson moved out, leaving her father to care for the baby. As a consequence, Brown filed a motion with the juvenile court asking the court to grant him custody of Elizabeth. In anex parte order filed on February 18, 1992, the court granted Brown temporary custody. A few months later, Elizabeth was returned to Debra's care, but the temporary custody order was never rescinded.
In June, 1993, Debra moved to Texas, taking Elizabeth with her. Approximately one month later, she returned to Miami County. At that time, Debra did not have a permanent residence or stable employment. In August, 1993, she placed Elizabeth with the child's great aunt and uncle, Jeralyn and Robert Hurley. While the Hurleys cared for Elizabeth, Debra trained to become an over-the-road truck driver. On April 6, 1994, Richard Brown moved the court to change custody of Elizabeth from himself to Jeralyn Hurley. On April 29, the juvenile court entered an order giving custody to Hurley. The order was signed by Richard Brown, Debra Wilson, and both Mr. and Mrs. Hurley.
On May 30, 1995, Wilson moved the court to order a schedule of visitation with her daughter. The motion noted that no visitation schedule had been included with the order placing custody of Elizabeth with Jeralyn Hurley. It also stated that some confusion had developed regarding when and where Wilson could see her daughter. On August 9, 1995, the court entered an agreed order establishing a visitation schedule in accordance with a Standard Order of Visitation.
On August 31, 1995, approximately two years after Elizabeth's great aunt took custody of her, Debra Wilson filed a motion with the court to regain custody. Elizabeth remained with the Hurleys while the case was pending in the juvenile court — thus until the court awarded custody to Debra on March 23, 1998, approximately two-and-a-half years later.
On February 7, 1997, Jeralyn Hurley asked the juvenile court to appoint a guardian ad litem (GAL) to protect Elizabeth's interests, and the court granted her motion. The GAL conducted a home study with both Debra Wilson and Jeralyn Hurley and filed a report of the home study with the trial court on June 23, 1997. As part of the study, the GAL interviewed Elizabeth Wilson. In the report, the GAL noted that Elizabeth wished to stay with her great aunt and uncle. The GAL also stated her opinion that it was in Elizabeth's best interest to remain with the Hurleys. The report recommended that Elizabeth remain until Debra showed a greater commitment to parenting by attending all court-scheduled visitations. The report also recommended that Debra Wilson's live-in boyfriend be given a drug/alcohol evaluation because of a recent D.U.I. conviction.
A hearing in the case was held before a magistrate on September 9, 1997. On October 6, the magistrate entered a decision granting custody of Elizabeth to her mother, Debra Wilson. The magistrate considered only whether Wilson was a suitable parent under the standard of In re Perales (1977),52 Ohio St.2d 89, syllabus, rather than using the best-interests-of-the-child standard of R.C. 3109.04. Finding that the order granting custody of Elizabeth to Jeralyn Hurley was an order of temporary custody, the magistrate held that Wilson had not relinquished her natural right to custody of her daughter. As a consequence, the magistrate found that Wilson was a suitable parent and awarded her custody.
Jeralyn Hurley filed timely objections to the magistrate's decision. Her principal objection was that the magistrate had applied the wrong standard in considering who should have custody. In particular, Hurley argued that the 1994 order granting her custody was not temporary. The trial court held a new hearing on that question on January 21, 1998. On March 23, 1998, the court entered an order overruling Hurley's objections and adopting the magistrate's report. The court affirmed the magistrate's finding that the order granting custody to Hurley was temporary. The court also found that Wilson had not otherwise relinquished her parental rights. Therefore, finding that Wilson was not otherwise unsuitable as a mother, the court granted custody of Elizabeth to her.
 II.
In a single assignment of error, Jeralyn Hurley claims:
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING THAT THE SIGNED RELEASE OF CUSTODY BY DEBRA WILSON TO JERALYN HURLEY WAS BEYOND TEMPORARY CUSTODY AND CONSTITUTED RELINQUISHMENT OF PARAMOUNT PARENTAL RIGHTS, REQUIRING A SHOWING OF `BEST INTEREST OF THE CHILD' UNDER OHIO REVISED CODE § 3109.04(B) PRIOR TO A CHANGE IN CUSTODY.
With this assignment of error, Hurley reasserts her argument that the the court applied the wrong standard in its determination of who should have custody in 1998. Her argument turns, in part, on the difference between the common-law standard for deciding custody matters involving parents and non-parents and the statutory standard that governs similar situations arising in a domestic relations court.
The statutory standard appears at R.C. 3109.04(D)(2). That subsection states:
 If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction.
 The Supreme Court of Ohio gave controlling interpretation to this provision in Boyer v. Boyer
(1976), 46 Ohio St.2d 83, paragraph one of the syllabus. In that case, the natural mother of a child sought custody of him in a divorce action. Id. at 84. The child, however, had lived with his paternal grandparents since shortly after his birth, and was six years-old at the time of the divorce. Id. at 83-84. The grandparents sought to retain custody, and the child's father supported their claim. After finding that the best interest of the child supported his remaining with the grandparents, the domestic relations court granted them custody. On appeal, the Supreme Court affirmed the judgment of the trial court. Id. at 87.
The mother in Boyer argued that the domestic relations court had erred in granting custody to a non-parent without first finding that his natural parents were unsuitable. Id. at 85-86. The Supreme Court held, to the contrary, that R.C. 3109.04
expressly permitted the trial court to award custody to a relative upon a finding that it was in the child's best interest. Id. at paragraph one of the syllabus. The Court stated, "The General Assembly has [with R.C. 3109.04] granted to children the right to be placed with the relative whose custodianship would be in the child's best interest." Id. at 86. The Court also expressed the view that "the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." Id. at 87. Because the General Assembly had acted in support of the child's rights, those rights prevailed. See id. at 86-87.
In Boyer, the Supreme Court applied a best-interests analysis adopted by statutory enactment in domestic relations cases. A different, common-law standard appears to apply, however, in proceedings between parents and non-parents for which the legislature has not expressly embraced the best-interests analysis. The common-law standard was announced in its most authoritative form by the Supreme Court in In re Perales (1977),52 Ohio St.2d 89, syllabus.
Perales involved a child custody action arising in the juvenile court under R.C. 2151.23, instead of the domestic relations court under R.C. 3109.04. Id. at 90. The mother inPerales sought to regain custody of the daughter she had given up approximately two years earlier when she signed an agreement purporting to surrender custody to a non-relative. Id. The trial court granted custody to the adoptive parent after finding that the child's best interest lay with that grant of custody. Id.
The court of appeals reversed the judgment, determining that the natural mother was entitled to custody as a matter of law. Id. at 91-92. The Supreme Court, then, reversed the appeals court's judgment, but it remanded the cause for the trial court to consider mother's suitability as a parent in accordance with the standard announced in its opinion. Id. at 99.
In the Perales opinion the Supreme Court noted a long-standing judicial rule recognizing that parents who are "suitable" have a "paramount" right to custody of their minor children unless they forfeit that right by contract, abandonment, or by their becoming unable to care for the children. Id. at 97, quoting Clark v. Bayer (1877), 32 Ohio St. 299. The court distinguished Boyer by noting that Boyer arose under R.C. 3109.04
and involved a custody award to a relative of the child, whereas the Perales case arose under R.C. 2151.23(A) and involved the custody claims of a non-relative. Id. at 96. Thus, the Court rejected the best-interests-only approach of Boyer for matters arising under R.C. 2151.23. Id. The Court held that before a juvenile court could award custody to a non-parent there must be a judicial finding of unsuitability, which could be shown by evidence that the parent contractually relinquished custody, that the parent had become incapable of caring for the child, or that an award of custody to the parent would be detrimental to the child. Id. at syllabus.
With this last criterion, detriment to the child, the Supreme Court adopted an approach to "suitability" that was strikingly close to a best-interests analysis. See id. at 98; see also Bakerv. Baker (1996), 113 Ohio App.3d 805, 810-811 ("Having written that the scope of inquiry under R.C. 2151.23(A) was broader, the court then proceeded, for all practical purposes, to merge that broader inquiry with the test it had applied in Boyer under R.C.3109.04."). The Perales Court instructed that, when dealing with a determination of unsuitability, trial courts should "measure it in terms of the harmful effect on the custody of the child, rather than in terms of society's judgment of the parent."52 Ohio St.2d at 98. Although the newly-defined test was similar to the best-interests test in approach, the Court still found reversible error in the trial court's application of the wrong test. See id.
at 99. Because an explicit finding of unsuitability was prerequisite to depriving a parent of custody under R.C. 2151.23, the Court remanded the cause for the trial court to consider the question of suitability. Id.
The adoption of two different standards for parent/non-parent custody disputes in Boyer and Perales was a recipe for confusion that has persisted for over twenty years. See Baker,113 Ohio App. 3d at 808; Thrasher v. Thrasher (1981), 3 Ohio App.3d 210, 213
("It is evident that there may be disputes between parents and non-parents under either R.C. 3109.04 or 2151.23, and it would be inconsistent and unwise to have two distinct substantive law tests, one for each statute."); Wright v. Wright (Oct. 19, 1995), Cuyahoga App. 67884, unreported, at 9 (Harper, J., dissenting)("The law is certainly unsettled in this regard considering the difference of opinion by the appellate courts of this state following the Supreme Court of Ohio's decision inPerales."). The resulting inconsistency is most apparent in cases like the instant case, where a relative of the child and the child's natural parent vie for custody. If the custody dispute arises in the context of a divorce, under R.C. 3109.04(D)(2) andBoyer, the court need only consider the best interest of the child. See, e.g., Baker, 113 Ohio App.3d at 812; Ray v. Ray (Dec. 14, 1989), Belmont App. No. 89-B-4, unreported, at 4. On the other hand, if a custody dispute arises as an original action in the juvenile court, the common-law Perales standard applies and the court must weigh parental suitability. See, e.g., Reynolds v.Goll (1996), 75 Ohio St.3d 121, 123; In re Porter (1996),113 Ohio App.3d 580, 589. Other than the difference in the statutes, there appears to be little logic in applying different standards simply because different divisions of the court are exercising jurisdiction. See Thrasher, 3 Ohio App.3d at 213. Ohio courts have occasionally attempted to reconcile the two standards in some fashion. Some attempt, for example, has been made to blur the distinction between the two tests. That attempt began with the Perales opinion itself. In a footnote to the opinion, the Court distinguished between two strands of thought operating in parent/non-parent custody cases in other states: one focusing on parental rights and the other focusing on a child's best interest. Id. at 96, fn. 9. The Court expressed the view that "the importance of those doctrines and the names attached to them has probably been overestimated." Id. The Court further noted that "both doctrines seek the same objective (albeit from two different approaches) and the result, under either doctrine is likely, in most cases, to be the same." Id.
Some courts have seen the "detriment to the child" prong of the Perales suitability test as a merger of these two doctrines. See, e.g., In re Pryor (1993), 86 Ohio App.3d 327, 334; In re Dunn
(1992), 79 Ohio App.3d 268, 271. In Baker v. Baker, the Ninth District Court of Appeals expressed this view.113 Ohio App.3d at 810-811. The Baker court stated:
 Properly viewed, the right of a parent is not in conflict with the right of a child. It is in the best interest of a child to be in custody of a suitable parent, and a parent is not suitable if it would not be in his or her child's best interest for him to have custody.
 Id. at 812. Thus, the Baker court held that a finding that a child's best interest lies with the custody of someone other than the parent contains an implicit finding of parental unsuitability. Id.
Nevertheless, the court concluded, an explicit finding of unsuitability is not required in a R.C. 3109.04 proceeding involving the custody claims of a relative, as it would be in a proceeding under R.C. 2151.23. Id.
In contrast to the Baker court's approach, other Ohio courts have attempted to glean from Perales what distinguishes its "detriment to the child" test from the best-interests analysis that the Court rejected. In In re Porter, 113 Ohio App.3d 580, the Third District Court of Appeals announced its view of the "distinction which exists between a pure `best interest test' and the test of detriment to the child used in Perales." Id. at 589. The Porter court held that, in considering detriment, a juvenile court should not weigh the advantages of non-parental custody, only the disadvantages of parental custody. Id. Thus, while a best-interests test might compare the two custodial situations, a detriment analysis should only consider whether some harm lies with the custody of the natural parent. See id.
There is some value in minimizing the difference between the two tests. First, courts and parties should both be aware that a finding of unsuitability under Perales is not a moral judgment about the parent's fitness. See Perales, 52 Ohio St.2d at 98; Inre Higby (1992), 81 Ohio App.3d 466, 470-471. Second, and conversely, even when applying a best-interests approach, courts can and should consider the manifest advantages of parental custody. See id. at 812. As the Perales court noted, even with a pure best-interests test, there is a rebuttable presumption in favor of the natural parent. Perales, 52 Ohio St.2d at 96, fn. 9.
Nevertheless, as a matter of appellate jurisprudence, we are obliged to keep in mind that the two tests are different. The Supreme Court has made clear that a trial court's failure to use the proper test in the proper setting is reversible error. SeePerales, 52 Ohio St.2d at 99; Boyer, 46 Ohio St.2d at 86 (holding that a best-interests-only inquiry is a substantive right vested in the child).
The similarity between the two tests, however, effectively highlights the irrationality of having two tests that apply to nearly identical factual circumstances but which differ depending upon which court is exercising jurisdiction. If — as the Baker
Court suggested — there is a distinction without a significant difference, appellate courts should not find reversible error in the application of the wrong test, because there should be no prejudice. If — as the Porter court held — there is some meaningful difference, the interest in prompt and final adjudication of custody matters should still weigh against the continued use of both tests. As long as different tests may apply without adequate reason for the distinction, there will be confusion, appealable error, and prolonged litigation of parent/non-parent custody disputes. The quantity of appellate decisions dealing with this problem over the last twenty years indicates to us that this is an area ripe for reform.
In the attempt to resolve the inconsistency of the two standards, a number of appellate courts have taken the position that the Perales suitability test governs all contests between parents and non-parents regardless of where the action originates. In Thrasher v. Thrasher (1981), 3 Ohio App.3d 210, the Ninth District Court of Appeals announced its view that the Supreme Court in Perales had overruled or modified Boyer, sub silentio.See id. at 213. In adopting this position, the Thrasher court noted the essential illogic of having two different standards.Id. Noting the emphasis in Perales on the natural parent's paramount rights, the Thrasher court concluded that a suitability determination should apply in all custody disputes involving claims of a non-parent. Id. at 214.
The Ninth District has subsequently criticized its holding inThrasher. In Reynolds v. Goll (1992), 80 Ohio App.3d 494, affirmed (1996), 75 Ohio St.3d 121, the Ninth District recognized that Boyer was still controlling precedent in proceedings under R.C. 3109.04 and announced its intention to no longer follow the precedent of Thrasher. Id. at 498; see also Baker,113 Ohio App. 3d at 813 (Ninth District holding that an explicit finding of unsuitability is not necessary under R.C. 3109.04.). Nevertheless, the Third District had already adopted the Thrasher rationale inIn re Dunn (1992), 79 Ohio App.3d 268, 271, and has continued to adhere to it. See Houser v. Houser (Aug. 31, 1998), Mercer App. No. 10-98-7, unreported, at 3-4. Likewise, the Fourth District Court of Appeals has adopted the Thrasher approach, Van Hoose v.Van Hoose (Apr. 19, 1990), Pike App. No. 433, unreported, at 4, and appears likely to adhere to it, see Thompson v. Thompson (Aug. 10, 1995), Highland App. No. 94CA859, unreported, at 4-5. Furthermore, the Sixth District has independently arrived at aThrasher-like approach to R.C. 3109.04(D)(2) custody disputes. See Miller v. Miller (1993), 86 Ohio App.3d 623, 625.
We agree with the Ninth District's more recent opinion inReynolds, that Boyer remains controlling authority on the standard applicable to R.C. 3109.04 proceedings involving the custodial rights of a relative. In any event, even if we were to resolve the conflict in standards by adopting a uniform Perales
suitability analysis, that resolution would not affect our determination of the instant case, because the trial court applied the Perales standard to a proceeding under R.C. 2151.23. Appellant Hurley, however, has asked us to adopt the opposite approach: applying a uniform Boyer best-interests test to both R.C. 2151.23 and R.C. 3109.04 cases. She argues that amendments to R.C. 2151.23 enacted by the General Assembly in 1984 effectively overruled Perales.
This position appears to have first been advanced by Don C. Bolsinger in an article in the Domestic Relations Journal of Ohio. The Custody Contest between a Parent and Non-parent (1990), 2 Domestic Rel.J. of Ohio 51. Therein, Bolsinger argues that, with the 1984 amendments that enacted subsection (F)(1) of R.C.2151.23, the legislature expressed its intention to adopt a uniform law of child-custody, applying the standards of the domestic relations court to juvenile court proceedings. That subsection states:
 (F)(1) The juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04, 3109.21 to 3109.36 [the Uniform Child Custody Jurisdiction Act], and 5103.20
to 5103.28 [the Interstate Compact on the Placement of Children] of the Revised Code.
 Because R.C. 3109.04 expressly adopts a best interests analysis in subsection (B), and particularly for custodial awards to non-parents in subsection (D)(1), Bolsinger argues, the common-law standard of Perales was abrogated by statutory enactment. Thus, the Boyer interpretation of R.C. 3109.04 would apply to custody disputes arising under R.C. 2151.23
There is much that recommends itself in this analysis. An analogous provision at R.C. 2151.23(F)(2) states that the "juvenile court shall exercise its jurisdiction in child support matters in accordance with section 3109.05 of the Revised Code." With that provision, it is clear that R.C. 3109.05 was made to apply in toto to all child support proceedings in juvenile court. See Crittendon v. Crittendon (1992), 82 Ohio App.3d 484, 488, citing R.C. 2151.23(F)(2) ("In exercising its jurisdiction in child support matters, the court must apply the substantive law under R.C. 3109.05.). This analogy appears to support Bolsinger's interpretation of the relevant statute."
In applying a uniform best-interests analysis, furthermore, a court would necessarily have to consider the value to a child of being raised by its natural parent. See Perales,52 Ohio St. at 96, fn. 9 ("[T]here is a rebuttable presumption that it is in the best interest of the child to be placed in the custody of his parents."); Baker, 113 Ohio App.3d at 812. That standard, therefore, is probably sufficiently protective of a parent's paramount rights under Ohio law. See Baker,113 Ohio App.3d at 812.
Nevertheless, counsel has cited to us no case authority, and our independent research has not discovered any, where a court adopted the best-interests analysis for parent/non-parent custody disputes originating in the juvenile court. Ultimately, we are reluctant to adopt a rule of law that is so inconsistent with Supreme Court precedent. The rule of Perales has been applied by the Supreme Court a number of times since 1984. See, e.g.,Reynolds, 75 Ohio St.3d at 123; Masitto v. Masitto (1986),22 Ohio St.3d 63, 65 (per curiam). We cannot doubt that, in continuing to apply Perales, the Supreme Court was aware of the structure of the relevant statutes and of the 1984 amendments to R.C. 2151.23. The rule in Ohio is that a statute in derogation of common law must be strictly construed. Sabol v. Pekoc (1947),148 Ohio St. 545, 552. If the General Assembly intended fifteen years ago to resolve the unfortunate dichotomy in Ohio child-custody law, it may have failed to speak with sufficient clarity.
Nonetheless, this court would welcome any reform, whether legislative or judicial in nature, that established a single, clear standard applicable to similar factual situations in both the juvenile and domestic relations courts. In his article, Bolsinger argues that a uniform best-interests analysis should apply to all custody disputes between a parent and a non-parent. The Boyer opinion suggests, however, only that the legislature, through R.C. 3109.04(D)(2), intended that a best-interests analysis apply in custody disputes between a parent and a relative of the child. Perhaps, the distinction should be drawn, in both the domestic relations and juvenile courts, between custodial disputes involving relatives and those involving others who are not parents of the child. The unsuitability standard, then, would only apply when a non-relative was seeking custody in either court. Whatever the most advantageous distinction, this court lacks the authority to draw it. As long as the statutes maintain their present form, and as long as Boyer and Perales remain the controlling authorities interpreting those statutes, two different standards will apply depending upon which court is making the custody decision. In this case, the Perales opinion provided the standard.
In light of the foregoing, we conclude that Perales remains the controlling authority dictating the standard that will apply in juvenile court custody proceedings between parents and non-parents. Because Perales holds that a juvenile court will not grant custody to a non-parent absent a finding of parental unsuitability, we see no error in the trial court's use of a suitability test in determining custody in the instant case.
 III.
Appellant Hurley's chief point of contention, however, is not with the applicability of the Perales rule to the proceedings below. The essence of her argument is that, even using thePerales test, Debra Wilson relinquished her paramount right to custody as a natural parent by signing the custody order in 1994. Thus, Hurley claims, the trial court erred in not going on to apply a best-interests analysis.
Hurley relies on the authority of Masitto v. Masitto (1986),22 Ohio St.3d 63 (per curiam). In that case, the Supreme Court held that once a parent has relinquished custody of her child, she may be found unsuitable under the Perales test. Id. at 65. The parent thus having surrendered her paramount right to custody, a best-interests analysis will determine the outcome of a parent/non-parent custody dispute. Id. at 67.
The dispute in Masitto arose between the child's maternal grandparents and her father. Id. at 63. The child's mother had suffered brain damage during labor and was rendered an invalid, although the child was born healthy. Id. For several years, the grandparents cared for mother and child during the day while the father worked. Then, at some point, the father left his wife and child permanently in the care of the maternal grandparents. Id.
With the father's consent, the grandparents were appointed guardians of the child by the probate court. Id. at 64. After the father sought a divorce, a decree was entered in the domestic relations court recognizing the grandparents' guardianship status and granting visitation rights to the father. Id. Later, the father sought custody of his daughter through the domestic relations court, but the court found that he had already relinquished his right to custody. Id. Concluding that it was in the child's best interest to remain with her grandparents, the trial court awarded custody to them. Id.
On appeal, the Lake County Court of Appeals concluded that the R.C. 3109.04 best-interests test did not apply because the original grant of custody was not made in the domestic relations court. Masitto v. Masitto (Dec. 14, 1984), Lake App. No. 10-094. Thus, the appellate court found that the proceedings below fell under R.C. 2151.23, although they had arisen in the domestic relations court and not the juvenile court. Id. at 2. Accordingly, the court of appeals found that the trial court had erred in awarding custody to the grandparents without first finding the father unsuitable. Id. at 3.
On appeal from that judgment, the Supreme Court reversed the court of appeals decision and reinstated that of trial court.22 Ohio St.3d at 67. The Court held that, under Perales, a parent can relinquish his natural right to custody, thereby making himself unsuitable for custody. Id. at 65. Whether such a relinquishment has occurred, the Court held, is a question of fact to be determined by the trial court. Id. at 66. Because the trial court had found that the father had relinquished custody, the Supreme Court concluded, that finding was sufficient to show that the father was unsuitable. Id. Then, the Court held, once a parent has surrendered custody, the best-interests test is the appropriate analysis for resolving the dispute between a parent and a non-parent. Id. Accordingly, the Court reinstated the original custody award to the grandparents. Id. at 67.
The procedural complexity underlying the Masitto case raises some question as to what the opinion precisely stands for. For instance, the opinion does not state clearly whether the best-interests test of R.C. 3109.04(B) applied because that statute governs determinations of custodial change in the domestic relations court or because the common law requires such an analysis after a determination of parental unsuitability. Alternatively, the opinion suggests that a best-interests standard applied because the case involved modification of a guardianship order under R.C. 2111.06.
The more recent Supreme Court of opinion of Reynolds v. Goll
(1996), 75 Ohio St.3d 121, resolved the question of whetherMasitto applies to juvenile court cases arising under R.C.2151.23(A); clearly now, it does. Id. at 124. In Reynolds, the Court applied the Masitto analysis to a case arising in the juvenile court. Id. Nevertheless, the Reynolds opinion does not explain why the substantive law of R.C. 3109.04 applies to R.C.2151.23 proceedings after a finding of unsuitability, but the common-law Perales standard applies otherwise. See id. at 123-124. If a finding of unsuitability brings custody dispute entirely within the R.C. 3109.04, other provisions within that statute may be relevant to parent/non-parent custody disputes in the juvenile court.
Neither the Masitto nor Reynolds opinions directly addressed whether all of the statutory criteria prerequisite to a change of custody under R.C. 3109.04 should apply to parent/non-parent custody disputes. When Masitto was decided, one asking for modification of a custody order under R.C. 3109.04 carried the heavy burden of showing that the present custodial environment posed a danger to the child. See In re Custody of Carpenter
(1987), 41 Ohio App.3d 182, 185. Statutory amendments have since lightened that burden somewhat. See Rowe v. Franklin (1995),105 Ohio App.3d 176, 180. Nevertheless, in addition to the child's best interest, the moving party must still show a change in the circumstances of the child's custodial environment. See Davis v.Flickinger (1997), 77 Ohio St.3d 415, 417. In our appellate district, we have interpreted Masitto to mean that, after a finding of parental unsuitability, a court will not change custody unless the parent can show both that change is in the child's best interest and that there has been a change in the custodial environment. See In re Guardianship of Sanders (1997), 118 Ohio App.3d 606,615; see also In re Whiting (1990), 70 Ohio App.3d 183,187 (Sixth Appellate District).
Therefore, if the juvenile court had found the appellee unsuitable under Perales, the court would have had to consider which custodial situation was in Elizabeth's best interest. It may also have had to consider whether a change had occurred in Elizabeth's custodial circumstances warranting a change in custody. Thus, the outcome of this appeal turns on whether the trial court erred in finding that Debra Wilson was a suitable parent. Hurley's chief claim in that regard is that Wilson, at some point, relinquished custody of her daughter.
In Masitto, the Supreme Court stated that the question of whether a parent has relinquished custody is one of fact, properly delegated to the trial court. 22 Ohio St.3d at 66. FollowingMasitto, our court has held that an order granting temporary custody of a child does not constitute a relinquishment of paramount parental rights under Perales. In re Custody ofCarpenter, 41 Ohio App.3d at 185. In Carpenter, we stated:
 The parent should only be deemed to have surrendered his natural right to preferential treatment vis a vis a non-parent if he does so knowingly and intelligently. An agreement to surrender temporary custody is not a knowing and intelligent surrender of the parent's natural right to preferential treatment in a subsequent determination.
 Id. Courts following Carpenter have concluded that a temporary custody order might yet be construed as a surrender of parental rights, if a long enough interval falls between the grant of temporary custody and the attempt to regain custody. See Miller, 86 Ohio App.3d at 626.
The trial court, in considering this question, found that the 1994 order granting custody of Elizabeth to Jeralyn Hurley was a temporary custody order. Although in Carpenter the court order explicitly denominated itself an order of temporary custody,Carpenter, 41 Ohio App.3d at 183, in the instant case the order was not so specific. The order, prepared by Richard Brown's attorney, stated:
 Upon Motion of the custodial maternal grandfather, custody is changed to the child's maternal great aunt by agreement of all the parties.
 The trial concluded that the order was temporary because it was a grant from the maternal grandfather to the great aunt. The court reasoned that the grandfather could not transfer a greater right than the one he possessed. The court also remarked upon testimony from both parties evidencing an intention that Debra Wilson should regain custody once she was ready to care for Elizabeth. Similarly uncontradicted testimony indicated that the court order was a practical measure allowing the Hurleys to provide for Elizabeth's medical needs and enroll her in school. In this light, the trial court concluded that the order granting custody to the aunt was a temporary one.
When a court interprets its own order, especially one made by agreement of the parties, it engages in a two-step analysis. First, if the order is clear and unambiguous, there is no question of fact, and the court should apply the order as it is written. Appellate review of such a matter is de novo. Second, if an ambiguity exists, the meaning of the court's order is made a factual question. In review of a trial court's factual findings in this regard, we defer its judgment. Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157, unreported, at 3.
Here, we agree with the trial court's implicit finding that the order in question was ambiguous. The order does not expressly denominate whether the grant of custody was intended to be temporary or lasting. The fact that, on its face, the order appears to substitute Jeralyn Hurley for Richard Brown, who was a temporary custodian, further marks this ambiguity. It is not outside the realm of possibility that a temporary custodian should seek a more permanent custodian for the child in his care. Nevertheless, we cannot doubt that, as a result of the change, without a more specific notation as to the nature of the order, the document is ambiguous.
In resolving the ambiguity, we find no abuse of discretion in the court's finding that the order was temporary. Both parties testified that they contemplated Wilson would regain custody of Elizabeth once she was able to effectively care for her. Testimony also indicated the order was intended, as a practical matter, to assist the Hurleys in making medical decisions for Elizabeth and finding her a place in the local school. These facts tend to show that the 1994 order was expected to be a temporary order when it took effect in April, 1994. Therefore, we reject appellant's argument that the court erred in so interpreting the order.
Hurley also argues, however, that, even if the order was temporary, Wilson allowed too much time to lapse while Elizabeth remained in someone else's custody. As a consequence, Hurley argues, Wilson forfeited her paramount parental rights. Approximately two years elapsed between the time Wilson first left her daughter with the Hurleys and when she filed her custody petition. Approximately two more years passed while the case dragged on in the juvenile court. The trial court found that the first two-year period was not long enough to convert the temporary custody into a relinquishment of custody by the natural mother. It also found that Wilson should not suffer a loss of her parental rights because of the two-year delay in litigating the case. The court noted that Wilson was not responsible for the delay. In fact, some of the delay was attributable to a change in Hurley's appointed counsel and to her new counsel's several requests for continuances. Thus, the court found that Wilson had not relinquished her paramount parental rights under Perales.
When there is a lengthy interval between a grant of temporary custody and the parent's attempt to regain custody, whether that interval is long enough for a court to find a surrender of parental rights is a question of fact. Miller,86 Ohio App.3d at 626. The trial court's finding on this question will not be disturbed if it supported by some reliable and credible evidence.Masitto, 22 Ohio St.3d at 63. Recently, the Supreme Court has instructed that, in these matters, reviewing courts should respect the traditional discretion that trial courts exercise in determining custody and "should be guided by the presumption that the trial court's findings were indeed correct." Reynolds,75 Ohio St.3d at 124.
Giving due deference to the findings of the trial court, we cannot find error in its determination that Wilson did not relinquish her custodial rights. In considering the length of the period of non-parental custody, we do not see that the trial court abused its discretion in finding that the custody was temporary. Although there is probably some length of years that a trial court could not designate temporary within its sound discretion, the two-year interval in this case was not such a term. We agree with the trial court, moreover, that the lengthy period of litigation in this case should not affect the determination of whether Elizabeth's mother relinquished custody of her.
Hurley also asks that we consider the period during which Elizabeth was in her grandfather's care. The record shows, however, that Debra Wilson had actual custody of Elizabeth during much of that time. The fact that no one acted to change the court order of temporary custody during that period should not significantly affect the analysis of whether a relinquishment occurred.
 IV.
In light of the foregoing, we find that the trial court did not err in concluding that the appellee, Debra Wilson, was a suitable parent who had not relinquished legal custody of her daughter. Under In re Perales (1977), 52 Ohio St.2d 89, syllabus, the juvenile court did not err in awarding Wilson custody of her daughter after finding her a suitable parent. Therefore, we overrule appellant's single assignment of error and affirm the juvenile court's judgment.
Judgment affirmed.
GRADY, P.J., and FAIN, J.,.concur.