MIHOCKA ET AL. *v.* ZIEGLER ET AL.

(No. 287601—Decided February 22, 1971.)

Common Pleas Court of Summit County.

*Mr. Marvin Manes, Messrs. Harris, Sacks, Subrin, Goldman, Penner & Stein,* for Mihocka et al.
*Mr. Charles Parker, Messrs. Parker & Parker,* for respondents J. J. Ziegler et al.

MAHONEY, J. This cause is on for hearing on the petition of the plaintiff for a peremptory writ of mandamus. The defendant-respondents filed several motions, some of which were taken under advisement and all of which the court now finds are not well taken and should be overruled.

The defendant-respondents further by way of the motion questioned the right of the plaintiffs to bring suit and argued that demand was not made pursuant to R. C. 733.59.

The court finds that under the case of *State, ex rel. Nimon,* v. *Springdale,* 6 Ohio St. 2d 1, "taxpayer" as used in R. C. 733.59 contemplates and includes any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf and for the benefit of the public. Thus, Mr. Harig, one of the plaintiffs herein, would be a "taxpayer," and his letter on behalf of the "concerned citizens" to the solicitor the court feels is sufficient compliance with R. C. 733.59.

Mandamus is defined by R. C. 2731.01 as follows: "Mandamus is a writ issued in the name of the state to an inferior tribunal, corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station."

The law in Ohio is such that the plaintiff has the burden of proof to establish by plain, clear and convincing evidence that he has a right to the relief which he seeks, and that he does not have a plain and adequate remedy at law. The general rule of law is that the court will enforce a duty where there is a clearly defined existing duty by law, and where there has been a plain dereliction of that duty.

As a general rule mandamus will lie to enforce ministerial acts or duties, and further to require the exercise of discretion, but not to control the discretion. Mandamus generally will not issue to control or regulate a general course of conduct, nor will it be granted in anticipation of a supposed omission of duty.

Courts generally have been reluctant to grant a writ of mandamus where a legislative body is involved because of the constitutional principle or doctrine of "separation of powers." The checks and balances of our system of government require the courts not to bridle the legislature's discretion or substitute the court's judgment for that of the Legislature. Where the courts have granted the writ, the duty has been one imposed by the constitution, state statute, or city charter. No cases are reported where the duty was found and writ issued in a case involving a non-charter city ordinance.

Generally an initiated ordinance, under the rule of *State, ex rel. Singer,* v. *Cartledge,* 129 Ohio St. 279, has no greater sanctity than legislation adopted by a city council. In the absence of provisions in the constitution or state statutes limiting or controlling its power, a city council or a non-charter city has power to amend or repeal an initiated ordinance theretofore adopted by the electors. Thus, the ordinance has the same standing as if council itself had passed it. It is not a "mandate" nor a superior law of any kind. It is just another ordinance.

In the instant case the court feels that the writ of mandamus should be denied in that the plaintiff failed to establish by clear and convincing evidence that the respondents have a clearly defined existing duty, and that there has been a plain dereliction of that duty.

The law (see Appendix, *infra*) which the plaintiffs claim places the duty upon the respondents is an initiated ordinance passed by the electors of the city of Barberton by a plurality of 43 votes on the third day of November, 1970, and which after a recount was certified to the Secretary of State as correct on November 27, 1970.

Next let us analyze the initiated ordinance. Section Two approves and adopts Urban Renewal Project No. Ohio R-121.

Section Three authorizes and "directs" *the necessary steps* by the *appropriate officers and bodies* to complete the application for * * * financial assistance *necessary for* * * * R-121 and *thereafter to carry out* R-121.

Just what are the *"necessary steps" "to complete," "to submit,"* and *"to carry out?"* They are not defined in the ordinance and must be, therefore, such as is dictated or determined by a federal agency, "H. U. D." How can the ordinance make the council, in effect, subservient to the will of the regional office of H. U. D.? I do not feel the voters intended to delegate (nor could they lawfully) council's authority to H. U. D.

It, therefore, is not clear just what are the duties that plaintiff says are imposed on the councilmen. The what, where, when, why, and how of the project are within their

discretion. There are hundreds of decisions to be made and dozens of pieces of legislation to be passed. Such matters as fire prevention codes, building codes, zoning codes, traffic controls, streets, personnel, salaries, appropriations, parking bonds, parks, metropolitan housing, recreation, race relations, etc., etc., etc. * * * are involved and over a period of several years.

The plaintiffs are, in effect, asking this court to regulate the future conduct of the City Council of Barberton. We would thus oversee the urban renewal program. This court, in effect, would not be requiring the council to exercise discretion, but actually would be controlling that discretion by saying, ''You have to vote, and your vote must be such as is consistent with the renewal program, regardless of the merits of the legislation or its effect on the rest of the city.'' This court cannot substitute its judgment for that of the councilmen.

The court's position is best summarized by this quote from 64 A. L. R. at page 975. ''A duty to be enforced by mandamus must be specific in its nature, and of such character that the courts can prescribe a definite act or series of acts which will constitute a performance of the duty, so that the respondent may know what he is obliged to do and may do the act required, and the court may know that the act has been performed and may enforce its performance. Hence, it is generally recognized that the writ will not issue to control and regulate a general course of official conduct for a long series of continuous acts to be performed under varying conditions, so that in enforcing the observance of the writ the court would have to undertake to oversee and control the general course of the official conduct of the party to whom the writ is directed.''

Additionally, the so-called Resolution Number 124-1970, which is in the hands of a council committee, has technically been under consideration by that committee for less than sixty days before the writ of mandamus was sought. A question certainly arises as to whether or not there has been a dereliction of a duty which supposedly arose on November 27, 1970, particularly one which is of a legislative character.

It is further to be noted that the time limits which are established and which the plaintiffs say are so necessary are time limits established by "H. U. D." They are not established by law of the state of Ohio.

The members of council can still comply with what the plaintiffs claim to be their duty by acting before March 1, 1971. Mandamus, of course, will not lie in anticipation of an omission of duty, regardless how strong the presumption may be that the persons will refuse to perform their duty when the proper time arrives.

In that connection the plaintiffs argue that the ordinance has been held in council committee for more than sixty days prior to the passage of the initiated ordinance. It is this court's feeling that the rules of council are something which must be enforced by council itself, and this court cannot enforce the rules of council. That legislative body will have to take its own steps within its own rules to bring the legislation out on to the council floor.

It is obvious that the *vox populi* has spoken in favor of the urban renewal project. Certainly this poses a moral question to the councilman on following through with the majority vote of the people. The initiated ordinance established a general policy favoring an urban renewal project. It did not clearly define the duties or the methods by which the project would be accomplished. It was left to the council to take the necessary steps to complete and carry out the project. The what, where, when, why, and how of the project are within the discretion of council.

Obviously if certain members of the council do not favor the program, then they will have to listen to the *vox populi* this next November.

*Judgment accordingly.*

### Appendix

Voted Upon and Passed By Voters in the City of Barberton November 3, 1970.

"Now Therefore, Be It Ordained By The People of the City of Barberton, Ohio:

"SECTION 1. That the people of the City of Barberton, Ohio hereby find and determine that the Lake View Urban Renewal Area Project (Project No. Ohio R-121) is in the best interests of the City of Barberton, Ohio, and that it is necessary and desirable to carry out said Urban Renewal Project in order to eliminate conditions of blight and deterioration, and in order to provide for the redevelopment of the Lake View Urban Renewal Project Area.

"SECTION 2. That the Urban Renewal Plan for the Lake View Urban Renewal Area Project (Project No. Ohio R-121), dated January 6, 1969, is hereby approved and adopted.

"SECTION 3. That it is hereby authorized and directed that the necessary steps be taken immediately, by the appropriate officers and bodies of the City of Barberton, Ohio, to complete the city's application for the federal financial assistance necessary for the aforesaid Urban Renewal Project (Project No. Ohio R-121), and to submit said application to the federal government, and thereafter to carry out the Lake View Urban Renewal Area Project (Project No. Ohio R-121).

"SECTION 4. This ordinance shall take effect and be in force from and after the earliest period allowed by law."