[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY AND OPINION
On November 30, 2001, the relator, Shelton Reeves, Sr., commenced this mandamus and prohibition action against the respondents, Judge Kathleen O'Malley, the Cuyahoga County Court of Common Pleas — Domestic Relations Division, and Deryvonne Tyson, to compel the judicial respondents to dismiss respondent Tyson (along with her efforts to seek custody of Shelton Reeves, Jr.) in the underlying domestic relations case, Reeves v. Reeves, Cuyahoga County Common Pleas Court, Domestic Relations Division Case No. D93-223387 and to prohibit the respondents from interfering with relator's parental rights. Mr. Reeves maintains that because the recent United States Supreme Court decision, Troxel v.Granville (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49, recognizes "the fundamental liberty interest of natural parents in the care, custody, and management of their child," the respondents have no authority to even consider granting custody to anyone else, including a grandparent.
On December 13, 2000, the judicial respondents moved to dismiss, and on December 21, 2000, Ms. Tyson also moved to dismiss the complaint. On January 2, 2001, Mr. Reeves filed his brief in opposition to the respondents' motions to dismiss and filed his own motion for summary judgment. On January 29, 2001, the judicial respondents filed their brief in opposition to the motion for summary judgment, and on February 27, 2001, Ms. Tyson filed her brief in opposition. On March 13, 2001, Mr. Reeves filed a notice of supplemental authority. The court has reviewed the submitted materials, and there are no genuine issues of material fact. Accordingly, the matter is now ripe for resolution. For the following reasons, this court grants the respondents' motions to dismiss, denies Mr. Reeves' motion for summary judgment, and dismisses the complaint for writs of mandamus and prohibition.
 FACTUAL AND PROCEDURAL BACKGROUND
Linda Reeves and Shelton Reeves were married, when Linda gave birth to Shelton Reeves, Jr. on March 30, 1987. During the vast majority of his life, Shelton, Jr., has lived with his mother and maternal grandmother, Deryvonne Tyson, at his grandmother's residence on E. 127th Street. The parties do not dispute that Shelton, Jr. has lived with his father only for short periods of time. Nor do they dispute that Mr. Reeves has never been adjudicated a neglectful or abusive parent. In early 1993, Linda Reeves filed for divorce in the underlying case. When the court granted the divorce, it awarded custody of Shelton, Jr. to her.
Linda Reeves died on April 13, 1999. A month later Mr. Reeves moved to modify the existing custody order and on July 27, 1999, filed a suggestion of Linda Reeves' death. On August 26, 1999, Ms. Tyson moved to intervene into the underlying case to seek custody of Shelton, Jr. On September 18, 1999, the judicial respondents granted her motion to intervene. Since Mrs. Reeves' death Shelton, Jr., has continued to reside with his grandmother, and Mr. Reeves has had visitation.[1] AfterTroxel's release on June 5, 2000, Mr. Reeves moved the judicial respondents to reconsider the order allowing Ms. Tyson to intervene. When the trial court denied that motion for reconsideration in October, Mr. Reeves commenced this writ action. The trial court has scheduled the issue of custody for June 4, 2001.
 DISCUSSION OF LAW Prohibition Claim
The principles governing prohibition are well established. Its requisites are (1) the respondent against whom it is sought is about to exercise judicial power, (2) the exercise of such power is unauthorized by law, and (3) there is no adequate remedy at law. State ex rel. Largentv. Fisher (1989), 43 Ohio St.3d 160, 540 N.E.2d 239. Prohibition will not lie unless it clearly appears that the court has no jurisdiction of the cause which it is attempting to adjudicate or the court is about to exceed its jurisdiction. State ex rel. Ellis v. McCabe (1941),138 Ohio St. 417, 35 N.E.2d 571, paragraph three of the syllabus. "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." State ex rel. Spartov. Juvenile Court of Darke County (1950), 153 Ohio St. 64, 65,90 N.E.2d 598. Furthermore, it should be used with great caution and not issue in a doubtful case. State ex rel. Merion V. Tuscarawas Cty. Courtof Common Pleas (1940), 137 Ohio St. 273, 28 N.E.2d 273 and Reiss v. Columbus Municipal Court (App. 1956), 76 Ohio Law Abs. 141, 145 N.E.2d 447. Nevertheless, when a court is patently and unambiguously without jurisdiction to act whatsoever, the availability or adequacy of a remedy is immaterial to the issuance of a writ of prohibition. State ex rel.Tilford v. Crush (1988), 39 Ohio St.3d 174, 529 N.E.2d 1245 and State exrel. Csank v. Jaffe (1995), 107 Ohio App.3d 387. However, absent such a patent and unambiguous lack of jurisdiction, a court having general jurisdiction of the subject matter of an action has authority to determine its own jurisdiction. A party challenging the court's jurisdiction has an adequate remedy at law via appeal from the court's holding that it has jurisdiction. State ex rel. Rootstown Local SchoolDistrict Board of Education v. Portage County Court of Common Pleas
(1997), 78 Ohio St.3d 489, 678 N.E.2d 1365 and State ex rel. Bradford v.Trumbull County Court (1992), 64 Ohio St.3d 502, 597 N.E.2d 116. Moreover, the court has discretion in issuing the writ of prohibition.State ex rel. Gilligan v. Hoddinott (1973), 36 Ohio St.2d 127,304 N.E.2d 382.
Ohio law currently provides that a domestic relations court in a divorce, legal separation or annulment proceeding, such as the underlying case, may award legal custody of a child to non-parents. R.C. 3109.06 provides in pertinent part:
 In any case in which a court of common pleas, or other court having jurisdiction, has issued an order that allocates parental rights and responsibilities for the case of minor children ***, the jurisdiction of the court shall not abate upon the death of the person awarded custody but shall continue for all purposes during the minority of the children. The court, upon its own motion or the motion of either parent or of any interested person acting on behalf of the children, may proceed to make further disposition of the case in the best interest of the children ***"
More specifically, R.C. 3109.04 (D) (2) provides in pertinent part: "If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child ***."
The Supreme Court of Ohio in Boyer v. Boyer (1976), 46 Ohio St.2d 83,346 N.E.2d 286, paragraph one of the syllabus, cert. denied (1976),429 U.S. 889, held "[i]n determining who shall have the care, custody and control of a child under 18 years of age, even though the child's parents are not found to be unfit or unsuitable, the court may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child." In Boyer the Supreme Court upheld the trial court's decision that an eight-year-old boy remain with his paternal grandparents, with whom he lived almost all of his life, instead of custody returning to the mother. The Supreme Court concluded: "Appellant's basic premise, that the parents have a right to custody which transcends consideration of the child's best interest, is recognition that the child's right to suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." 46 Ohio St.2d at 87. Similarly, this court inWright v. Wright (Oct. 19, 1995), Cuyahoga App. No. 67884, unreported, followed Boyer in allowing a grandmother to retain custody of a child over the appeals of the mother. This court ruled that because of the statutory emphasis on protecting the best interests of the child, the trial court was not obligated to find that the parents were unfit before awarding custody to the grandmother.
Other provisions of Ohio law also permit courts to award custody of children to persons other than their parents. R.C. 2151.23(A)(2) provides that the juvenile court has exclusive jurisdiction to determine the custody of any child not a ward of another court of this state. In interpreting this statute, the Supreme Court of Ohio in In re Perales
(1977), 52 Ohio St.2d 89, 369 N.E.2d 1047. formulated the criteria for determining when custody should be given to a nonparent slightly differently than under R.C. 3109.04 and Boyer. In granting child custody to a nonparent under R.C. 2151.23(A)(2), the trial court must find parental unsuitability, such as abandonment or incapacity in caring for a child. Such unsuitability could include a finding that an award of custody to the parent would be detrimental to the child. The Supreme Court, relying on Meyer v. Nebraska (1923), 262 U.S. 390, recognized "[t]he right of a parent to raise his or her child has been defined as a `natural' right subject to the protections of due process."52 Ohio St.2d at 96. Thus parents are entitled to the custody of their children unless they are unfit or have abandoned their children or some other extraordinary circumstances require that they be deprived of custody. The court further noted that the differences between the "best interest" doctrine and "the parental right" doctrine is probably overestimated; courts operating under the "best interest" tacitly assume that the welfare of the child is best served by living with his parents.
Therefore, some Ohio courts have reasoned that the Perales test is the actual test in determining custody cases even under R.C. 3109.04.[2]Thrasher v. Thrasher (1981), 3 Ohio App.3d 210, 444 N.E.2d 431; Lewis v.Lewis (Jan. 31, 2001), Jefferson Cty. App. 99-JE-6, unreported, in which the court affirmed the trial court's decision that the parents were not suitable and placed custody with the maternal grandmother.
Baker v. Baker (1996), 113 Ohio App.3d 805, 682 N.E.2d 661, cert. denied (1996), 77 Ohio St.3d 1525, which found the father unsuitable and awarded custody to an uncle, is particularly instructive because of its efforts to summarize and synthesize the law in this area. First, relying on Prince v. Massachusetts (1944), 321 U.S. 158 and Stanly v. Illinois
(1972), 405 U.S. 645, the court recognized that the rights to conceive and raise one's children are essential, basic civil rights of humanity; thus, the custody, care, and nurture of the child reside first with the parents. The court then noted R.C. 3109.04 appears to employ solely the best interest of the child test and R.C. 2151.23(A)(2) appears to employ a parent suitability test. However, the appellate court reasoned that inPerales the Supreme Court for all practical purposes merged the Boyer
best interest test with the suitability test. Thus under R.C. 3109.04 the trial court does not need to make an explicit finding of unsuitability, but the parent's natural right to the custody of the child is protected under the statute by the requirement that custody not be awarded to a nonparent unless such award is in the best interest of the child and by an implicit finding regarding suitability.
In summarizing Ohio law on this matter, this court notes that Ohio has long recognized the natural right a parent has to the care and custody of the child. Nevertheless, in the many circumstances following divorce and death, Ohio has granted the domestic relations court the authority to examine the facts and the power to award custody of a child to a nonparent, especially a relative under R.C. 3109.04. Although the statute provides a best interest test, other Ohio authority indicates that a court should employ, at least implicitly, a parental rights test under which custody would be with a parent unless the parent is unsuitable or placing custody with the parent would be harmful to the child.
Mr. Reeves argues, however, that pursuant to Troxel the United States Constitution through the Due Process Clause of the Fourteenth Amendment prohibits states from interfering with parental rights. He maintains that as Troxel prohibits awarding visitation to grandparents, it must also prohibit awarding custody to grandparents as a corollary. If awarding visitation to grandparents offends the Constitution, then the even greater intrusion of awarding custody must also be offensive. Because the Constitution is the supreme law of the land, its effect through Troxel must immediately override all provisions of state law and strip the Ohio Domestic Relations Court of all authority and jurisdiction to award custody to anyone but Mr. Reeves. Mr. Reeves also relies on Esch v. Esch
(Feb. 23, 2001), Montgomery App. No. 18489, unreported and Oliver v.Feldner (Jan. 25, 2001), Noble App. No. 271, unreported.
In Troxel the United States Supreme Court affirmed the Washington State Supreme Court ruling that its visitation statute, 26.10.160(3), unconstitutionally interfered with the fundamental right of parents to rear their children.[3] That statute provided that any person may petition for visitation at any time and that the court may grant such visitation when the visitation serves the best interest of the child. After their son had died, the paternal grandparents sought more visitation than the mother would allow. Relying, inter alia, on Meyer v.Nebraska, Prince v. Massachusetts and Stanly v. Illinois, the United States Supreme Court recognized the "fundamental right of parents to make decisions concerning the care, custody and control of their children."120 S.Ct. at 2060. The Court ruled that the Washington visitation statute, as applied, violated this fundamental liberty right because it gave no deference to the parents' decision concerning their children; a fit parent's decision must be accorded at least some special weight. A judge should not override a parent's decision on visitation merely because the judge thinks that he or she can make a "better" decision. The Court further noted that the Washington Supreme Court could have given the statute a different, more narrow interpretation which might have been constitutional. Statutes which require a showing of harm to the child by withholding visitation or statutes which require a showing that the parents unreasonably withheld visitation might be constitutional. In concluding the opinion Justice O'Connor summarized that the Washington statute was overbroad and, as applied, it constitutionally interfered with a parent's liberty interest. She then continued to narrow the scope of the opinion by saying the court did not decide "whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. *** [T]he constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and *** the constitutional protections in this area are best elaborated with care." (Citations omitted.)
Esch presents a case very similar to the instant case. After Lindsey Esch was born, her parents were divorced. The father spent little time with Lindsey after the divorce, and Lindsey stayed off and on with her maternal grandmother. When the mother became involved with alcohol and drugs and was homeless, the maternal grandmother moved for custody. Subsequently, the father also sought custody. The domestic relations court pursuant to R.C. 3109.04 ruled that it would be in Lindsey's best interest to be in the grandmother's custody. The father appealed. Relying on Troxel, the Second District Court of Appeals ruled that R.C.3109.04(D)(2) and its accompanying best interest standard was unconstitutional because it did not sufficiently protect a parent's right to make child-rearing decisions. The appellate court reversed and remanded to the domestic relations court to make the custody determination pursuant to the Perales standard.
In Feldner the Seventh District Court of Appeals, relying in part uponTroxel, held that the trial court had abused its discretion in granting grandparents visitation with their grandson after the father had died pursuant to R.C. 3109.051. In remanding the case to the trial court for further proceedings on the issue of visitation, the appellate court did not rule that Ohio's visitation rights statute was unconstitutional. Rather, it instructed the trial court to apply the statute so as to "to afford some special weight to appellant's decision with regards to the issue of grandparents' visitation in an effort to protect appellant's fundamental, constitutional rights ***."
In the present case the judicial respondents are not patently and unambiguously without jurisdiction to award custody of Shelton, Jr., or to hold a hearing to aid in that determination. Ohio has vested the Domestic Relations Court with the jurisdiction to award custody of minor children in divorce cases, and that includes awarding custody after divorce and the death of the custodial parent. Troxel does not stand for the proposition that custody must be given to the parent; it does not address that issue. Rather, its narrow holding is that the best interest standard as the Washington trial court applied it to the broad visitation statute did not give sufficient deference to parental prerogatives. The real issue is not jurisdiction but the proper standard.
As demonstrated above, Ohio law is not perfectly clear on what standard should be used in awarding custody. R.C. 3109.04(D)(2) explicitly provides the best interest standard. In Boyer the Supreme Court of Ohio approved this standard, and this court followed Boyer in Wright. Nevertheless, the Supreme Court in Perales might have adopted for all custody cases an implicit parental suitability test, which would permit awarding custody to a nonparent if custody to the complaining parent would harm the child. Thrasher, Lewis and Baker followed this theory.Esch and Feldner, in relying on Troxel, ruled, on the other hand, that the trial court must explicitly find parental unsuitability or otherwise give deference to parental prerogatives.
Because Troxel's holding was so narrow, it is possible that any or at least one of these standards would be constitutional.[4] Regardless of the standard used, the Domestic Relations Court would have the jurisdiction and the duty to award custody. Even if the judicial respondents applied the wrong standard, the error would not exceed the court's jurisdiction such that it would be subject to a pre-emptive strike through an extraordinary writ. Rather, using the wrong standard would be an error of law remediable on appeal.
Accordingly, this court declines to issue a writ of prohibition forbidding the judicial respondents from interfering with Mr. Reeves' parental rights. Neither Troxel nor Ohio law requires that; indeed, both would permit such interference if the court finds the necessary facts and applies the proper standards. Moreover, this court will follow Justice O'Connor's closing admonition "that the constitutionality of any standard for awarding visitation [or custody] turns on the specific manner in which the standard is applied and that the constitutional protections in this area are best elaborated with care," and will not offer its opinion at this time and in this procedural context as to what Ohio's standard is or should be.[5]
 Mandamus Claim
The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondent must have a clear legal duty to perform the requested relief and (3) there must be no adequate remedy at law. Additionally, although mandamus may be used to compel a court to exercise judgment or to discharge a function, it may not control judicial discretion, even if that discretion is grossly abused. State ex rel. Ney v. Niehaus (1987), 33 Ohio St.3d 118,515 N.E.2d 914. Furthermore, mandamus is not a substitute for appeal.State ex rel. Keenan v. Calabrese (1994), 69 Ohio St.3d 176,631 N.E.2d 119; State ex rel. Daggett v. Gessman (1973), 34 Ohio St.2d 55,295 N.E.2d 659; and State ex rel. Pressley v. Industrial Commission ofOhio (1967), 11 Ohio St.2d 141, 228 N.E.2d 631, paragraph three of the syllabus. Thus mandamus does not lie to correct errors and procedural irregularities in the course of a case. State ex rel. Tommie Jerninghanv. Judge Patricia Gaughan (Sept. 26, 1994), Cuyahoga App. No. 67787, unreported. Nor will it issue to remedy the anticipated nonperformance of a duty. Department of Administrative Services v. State EmploymentRelations Board (1990), 54 Ohio St.3d 48, 562 N.E.2d 125; State ex rel.Home Care Pharmacy v. Creasy (1981), 67 Ohio St.2d 342, 423 N.E.2d 482
and Mihocka v. Ziegler (1971), 28 Ohio Misc. 105, 274 N.E.2d 583. Moreover, mandamus is an extraordinary remedy which is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. State ex rel. Taylor v. Glasser (1977), 50 Ohio St.2d 165,364 N.E.2d 1; State ex rel. Shafer v. Ohio Turnpike Commission (1953),159 Ohio St. 581, 113 N.E.2d 14; State ex rel. Connole v. Cleveland Boardof Education (1993), 87 Ohio App.3d 43, 621 N.E.2d 850; and State exrel. Dayton-Oakwood Press v. Dissinger (1940), 32 Ohio Law Abs. 308.
In the instant case the judicial respondents have neither the clear, legal duty to dismiss respondent Tyson from the case nor the clear, legal duty to award Mr. Reeves custody of Shelton, Jr. Troxel does not stand for the proposition that a complaining, noncustodial parent must be given custody of his or her child over another relative. Rather, Troxel raised the issue of appropriate standards for making such a determination. Determining the standards is an issue of law, remediable on appeal, for which mandamus will not lie. Properly applying the standards is a matter of discretion, not remediable in advance by mandamus but remediable on appeal, if appropriate. Thus this court declines to issue a writ of mandamus.
Accordingly, this court grants the respondents' motions to dismiss and dismisses this writ action. Relator to pay costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
______________________________________ DIANE KARPINSKI, ADMINISTRATIVE JUDGE:
KENNETH A. ROCCO. J. and MICHAEL J. CORRIGAN.J. CONCUR.
[1] On November 23, 1999, Mr. Reeves and Ms. Tyson entered into an interim, temporary custody order under which Ms. Tyson would continue to have custody, and Mr. Reeve, s would have specified visitation. This agreement also specified that both would cooperate in obtaining counseling for Shelton, Jr.
[2] Justice William B. Brown wrote both Boyer and Perales.
[3] The Washington Supreme Court ruled that the Constitution permits a state to interfere with the right of parents to raise their children only to prevent harm to the child. The statute did not require a threshold showing of harm. Also the statute was too broad.
[4] This court is not necessarily persuaded by Mr. Reeves' argument that the issues of custody and visitation are not distinguishable. In a visitation case at least one parent will have been exercising full parental prerogatives. That is not necessarily true in custody cases. As demonstrated by the instant case and many of the cases researched by the parties and this court, e.g., Clark v. Bayer (1877), 32 Ohio St. 299, it is a reoccurring scenario for parents to give custody of their children to a grandparent or other close relative often for long periods of time. Such a case may raise authentically distinguishable issues and facts.
[5] The court further notes that in Troxel many of the other justices advocated proceeding with extreme caution in this area. Justice Souter in his concurring opinion stated he would affirm the Supreme Court of Washington's opinion as "consistent with this Court's prior cases addressing the substantive interests at stake. I would say no more." He also stated that the issues "do not call for turning any fresh furrows in the `treacherous field' of substantive due process." Justice Stevens in his dissent stated that the Court would have been wise to deny certiorari. Justice Scalia in his dissent questioned the propriety of constitutional family law from a constitution which does not mention the subject and urged the Court not to create a federally, judicially prescribed regime of constitutionally based family law. Justice Kennedy in his dissent also stated that "[t]he protection the Constitution requires, then, must be elaborated with care, using the discipline and instruction of the case law system. We must keep in mind that family courts in the 50 states confront these factual variations each day, and are best situated to consider the unpredictable, yet inevitable, issues that arise."