BAKER; Schneeberger et al., Appellees,

v.

BAKER, Appellant.

[Cite as *Baker v. Baker* (1996), 113 Ohio App.3d 805.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17533.

Decided Aug. 21, 1996.

John Vuillemin, Thomas Dettlebach and Timothy Champion, for appellees.

*John Dohner,* for appellant.

DICKINSON, Judge.

Robert Baker has appealed from an order of the Summit County Common Pleas Court, Domestic Relations Division, that granted custody of his sons, Robert and Ryan, to their maternal uncle, David Schneeberger. Baker has argued that (1) the domestic relations court violated his "fundamental right under the United States and Ohio Constitutions to the custody of his children as against all third parties" by awarding custody to Schneeberger without finding that Baker was an unfit or otherwise unsuitable parent, and (2) the domestic relations court violated his right to equal protection of the law by awarding custody of his children to Schneeberger without finding that Baker was an unfit or otherwise unsuitable parent.[1] This court affirms the judgment of the domestic relations court because a finding that Baker was unsuitable to have custody of his sons was implicit in the trial court's determination that it was in the best interest of his children to award custody to Schneeberger.

I

Robert Baker and his former wife, Robyn Baker, were granted a divorce on January 7, 1991.[2] The domestic relations court granted Mrs. Baker custody of the parties' two sons, Robert and Ryan. Mrs. Baker died on September 1, 1992. After her death, Mr. Baker moved the domestic relations court for custody of the children. Mrs. Baker's brother, David Schneeberger, also moved for custody. The motions were heard by a magistrate, who, on August 22, 1995, recommended that custody of the children be awarded to Schneeberger. The trial court adopted the magistrate's recommendation on September 29, 1995, and Baker timely appealed to this court.

II

A

Baker's first assignment of error is that the domestic relations court violated his "fundamental right under the United States and Ohio Constitutions to the custody of his children as against all third parties" by awarding custody to

---

1. Baker's assignments of error have been consolidated for ease of discussion.

2. Baker did not include a transcript of testimony presented in the trial court as part of the record before this court. The factual recitation included in this opinion, therefore, is drawn from the magistrate's decision, which was adopted by the trial court.

Schneeberger without finding that Baker was an unfit or otherwise unsuitable parent. The United States Supreme Court has recognized that parents have fundamental rights to conceive and raise their children:

"The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and '[r]ights far more precious * * * than property rights.' 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts,* 321 U.S. 158, 166 [64 S.Ct. 438, 442, 88 L.Ed. 645, 652–653] (1944)." (Citations omitted.) *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–1213, 31 L.Ed.2d 551, 558–559.

Those rights have "found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." (Citations omitted.) 405 U.S. at 651, 92 S.Ct. at 1213, 31 L.Ed.2d at 559. In *Quilloin v. Walcott* (1978), 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511, the court wrote that the right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit:

"We have little doubt that the Due Process Clause would be offended 'if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' " 434 U.S. at 255, 98 S.Ct. at 555, 54 L.Ed.2d at 520, quoting *Smith v. Org. of Foster Families* (1977), 431 U.S. 816, 862–863, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14, 46–47 (Stewart, J., concurring in judgment); see *In re Schoeppner* (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 13–14, 345 N.E.2d 608, 610.

In this case, the magistrate specifically found that it was "in the best interest of [Robert] and Ryan to be placed in the care, custody and control of their uncle David Schneeberger." Baker does not challenge that finding. Rather, he has argued that he was deprived of his constitutional right to custody of his children because the trial court did not also find that he was an "unfit or otherwise unsuitable parent."

■ Child custody disputes under Ohio law fall within the coverage of one of two statutes, depending upon the circumstances. At least in part because of differences between the two statutes, there has been confusion regarding when custody of a child may be awarded to a third party in preference to one of the child's parents. See *Reynolds v. Goll* (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276; *Thrasher v. Thrasher* (1981), 3 Ohio App.3d 210, 3 OBR 240, 444 N.E.2d 431.

The first statute under which child custody disputes may fall is R.C. 3109.04. Its primary purpose is to provide guidance to domestic relations courts for the allocation of parental rights and responsibilities between divorcing parents. R.C. 3109.04(D)(2), however, provides that, under certain circumstances, a domestic relations court may award custody of children of divorcing parents to a relative of the children other than one of the parents. Pursuant to R.C. 3109.04(D)(2), custody may be awarded to a relative other than a parent "when it is in the best interest of the child":

"If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child * * *."

The second statute under which child custody disputes may fall is R.C. 2151.23. It establishes jurisdiction of juvenile courts over a number of matters. R.C. 2151.23(A)(2) provides that juvenile courts have exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state." There is no provision of the Ohio Revised Code that provides a standard for a juvenile court to apply in determining custody disputes that fall within the jurisdiction provided by R.C. 2151.23(A)(2).

The trial court correctly determined that this case fell within the coverage of R.C. 3109.04. R.C. 3109.06 provides that, upon the death of a person to whom a court previously awarded custody of children, the court has jurisdiction to "make further disposition of the case in the best interests of the children." Inasmuch as the trial court had previously awarded custody to Mrs. Baker, upon her death, it had jurisdiction to again award custody of the children. R.C. 3109.06 provides that, in such a situation, the court should award custody "in accordance with section 3109.04 of the Revised Code."

In *Boyer v. Boyer* (1976), 46 Ohio St.2d 83, 75 O.O.2d 156, 346 N.E.2d 286, the Ohio Supreme Court considered when custody should be awarded to a third person in preference to a parent under R.C. 3109.04. The dispute in that case was between a child's mother and the child's paternal grandparents. The trial court awarded custody to the grandparents, with whom the child had been living for a number of years. In doing so, it did not find that the mother was unfit or unsuitable to have custody:

" 'I am not making a finding that either party is unfit to have custody of this child, I am saying that it is for the best interest of the child to make this order.' " *Id.* at 84, 75 O.O.2d at 157, 346 N.E.2d at 287, quoting the trial court. The Ohio Supreme Court affirmed the judgment of the trial court:

"In determining who shall have the care, custody, and control of a child under 18 years of age, even though the child's parents are not found to be unfit or unsuitable, the court may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child." *Id.* at paragraph one of the syllabus.

In so holding, the Ohio Supreme Court appeared to reason that, pursuant to R.C. 3109.04, when a parent's right to custody of his or her child conflicts with the best interest of that child, the parent's right must give way:

"Children and parents of those children, stand equal before the law. They are entitled to protection from and by the law. Appellant's basic premise, that the parents have a right to custody which transcends consideration of the child's best interest, is recognition that the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." *Id.* at 87, 75 O.O.2d at 158, 346 N.E.2d at 289.

The year following the *Boyer* decision, the Ohio Supreme Court, in *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, considered a child custody dispute between a parent and a nonparent under R.C. 2151.23(A)(2). The author of the *Boyer* opinion also wrote the *Perales* opinion.

The parties in *Perales* were the child's mother and a friend of the mother with whom the mother had placed the child upon first bringing her home from the hospital. The juvenile court wrote that, under the guidelines of R.C. 3109.04, it was in the child's best interest to remain in the custody of her mother's friend rather than to be placed in her mother's custody. The court of appeals reversed the decision of the juvenile court and ordered that custody be awarded to the mother. The Ohio Supreme Court determined that the trial court had improperly relied upon R.C. 3109.04. The Supreme Court reasoned that, because that statute deals with custody disputes arising out of divorces, the opposing parties are usually the child's parents. Since both parents have a right to custody, those conflicting rights cancel each other out, and the best interest of the child is determinative. Actions under R.C. 2151.23(A)(2) between parents and nonparents, however, are different:

"Although divorce custody proceedings involving disputes between two parents are logically best served by looking only to the welfare of the child, the court's scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child." *Id.* at 96, 6 O.O.3d at 296, 369 N.E.2d at 1051.

Having written that the scope of inquiry under R.C. 2151.23(A) was broader, the court then proceeded, for all practical purposes, to merge that broader scope with the test it had applied in *Boyer* under R.C. 3109.04. The court cited *Clark v.*

*Bayer* (1877), 32 Ohio St. 299, in which, it wrote, it had made "[t]he major statement * * * on the custody rights of a parent and a nonparent." *Perales,* 52 Ohio St.2d at 97, 6 O.O.3d at 297, 369 N.E.2d at 1051. It noted that, although it had written in *Clark* that "the welfare of the minor is first to be considered" in child custody disputes, it had also determined in that case that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." *Id.* at 97, 6 O.O.3d at 297, 369 N.E.2d at 1051–1052. According to the court, by limiting the reasons for which a parent could be denied custody, it had, in *Clark,* specifically provided for the interests of the parent:

"We find, based on the concern displayed in the *Clark* opinion for balancing the interests of both parent and child, that parents may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable—that is, that an award of custody would be detrimental to the child." *Id.* at 98, 6 O.O.3d at 297, 369 N.E.2d at 1052.

The court explained that detriment to the child could include "emotional and psychological (as well as the physical and mental) effects which a custody award may have on a child." *Id.* at 98, 6 O.O.3d at 297, 369 N.E.2d at 1052, at fn. 11.

 In listing specific reasons that would permit a court to award custody to someone other than a parent, the court melded the best-interest-of-the-child test with the suitability-of-the-parent test. As alluded to earlier, children have a right to be raised by their parents that is concomitant to parents' right to raise their children. Unless it would be detrimental to a child to be in the custody of his or her parent, it is in his or her best interest to be in that parent's custody. When it is detrimental for a child to be in the custody of his or her parent, it is not in the best interest of the child for the parent to have custody and the parent is unsuitable to have custody. As noted by the Court in *Perales,* "unsuitability" within this context does not necessarily connote "some moral or character weakness; instead, it is designed to indicate that contractual relinquishment of custody, abandonment, complete inability to provide care or support, or that parental custody would be detrimental to the child, has been proved by a preponderance of the evidence." *Id.* at 99, 6 O.O.3d at 298, 369 N.E.2d at 1052, at fn. 12.

The court in *Perales* clarified the passage in the *Boyer* opinion that had appeared to endorse the idea that a parent's right to custody must give way to a child's best interest:

"It is the last criteria [*sic* ], other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in *Boyer* \* \* \*, that 'the child's right to a suitable custodian and parental rights, when not in harmony, are *competing* interests, requiring that one give way to the other.' (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the *Clark* opinion." *Id.* at 98, 6 O.O.3d at 297, 369 N.E.2d at 1052.

Properly viewed, the right of a parent is not in conflict with the right of a child. It is in the best interest of a child to be in the custody of a suitable parent, and a parent is not suitable if it would not be in his or her child's best interest for him or her to have custody.

As noted previously, Baker has not challenged the trial court's determination that it was in Robert and Ryan's best interest for custody to be awarded to Schneeberger. In making that determination, the magistrate relied upon, among other things, findings that Baker had had two DUI convictions in the preceding five years, had a chemical/alcohol abuse problem that he "minimized," "lacked insight into the children's position," and "lacked insight into the seriousness of taking the boys to North Carolina and had no understanding of how taking them out of state could be detrimental to them." Those findings not only tended to prove that it was not in the best interest of the boys for Baker to be awarded custody, but necessarily also tended to prove that Baker was unsuitable to have custody.

■ The Ohio Supreme Court concluded its opinion in *Perales* by holding that, in an R.C. 2151.23 action, once the trial court determines that custody in a parent would be detrimental to the child, "it must indicate that a preponderance of the evidence militates against parental custody by making a finding of unsuitability." *Id.* at 98–99, 6 O.O.3d at 298, 369 N.E.2d at 1052. It explained that it was imposing that requirement in accordance with procedural protections afforded parents by the General Assembly in neglect, abuse or dependency hearings. *Id.* at 99, 6 O.O.3d at 298, 369 N.E.2d at 1052, at fn. 12. R.C. 3109.04 does not require an explicit finding of unsuitability, and this court concludes that such an explicit finding is not mandated by either the United States or Ohio Constitution. Rather, a parent's constitutional right to custody of his child is sufficiently protected by the requirement of R.C. 3109.04 that custody not be awarded to a nonparent unless such an award is in the best interest of the child and by the implicit finding regarding suitability included in that finding. Baker's first assignment of error is overruled.

## B

Baker's second assignment of error is that the domestic relations court violated his right to equal protection of the law by awarding custody of his children to Schneeberger without finding that Baker was an unfit or otherwise unsuitable parent. In accordance with the decision of the Ohio Supreme Court in *Perales,* a trial court is required to make an explicit finding of unsuitability before awarding custody of a child to a nonparent in preference to a parent in an action in juvenile court pursuant to R.C. 2151.23(A)(2). As discussed in connection with Baker's first assignment of error, such an explicit finding is not necessary in an action under R.C. 3109.04, the implicit finding included in a determination of the best interest of the child being sufficient.

In actions under R.C. 3109.04, courts are restricted to awarding custody to a relative of the child. No such restriction is applicable to actions under R.C. 2151.23(A)(2). Because it is more of an affront to a parent's interests for custody of a child to be awarded to a nonrelative, the additional procedural requirement in an action under R.C. 2151.23(A)(2) is justified. Baker did not face the potential that custody of his sons would be awarded to a nonrelative. This court concludes that the procedural distinction between actions under R.C. 3109.04 and 2151.23(A)(2) does not violate Baker's right to equal protection of the law because he is not similarly situated to a parent involved in a custody dispute pursuant to R.C. 2151.23(A)(2). See *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 286–287, 595 N.E.2d 862, 864–866. Baker's second assignment of error is overruled.

## III

Baker's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and REECE, J., concur.