OPINION
Plaintiff-appellant Jennifer L. Gorslene appeals the February 28, 2001 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division, which denied her motion for an order reallocating parental rights. Defendants-appellees are Robert and Jeri Hockstock.
 STATEMENT OF THE CASE AND FACTS
On July 15, 1994, appellant filed a Complaint to establish paternity of her child, Christopher Michael Hockstock. Christopher was born May 28, 1993. In a Judgment Entry dated January 26, 1995, the trial court found Shane R. Huck to be Christopher's natural father. The trial court granted custody to appellant and designated her the residential parent.
On May 15, 1995, appellant and appellees, appellant's father and step-mother, entered into a Temporary Custody Agreement. The agreement provided for the transfer of "temporary custody" of the minor to appellees until such time as appellant was able to regain "permanent, full-time custody." Appellant agreed to be "financially stable, in good physical health, and able to care for Christopher Hockstock and provide a stable home-life for him" before she could "regain permanent, full-time custody * * *" Appellant also agreed to provide the funding for her son's daycare expenses, and health care insurance.
On September 12, 1995, appellees filed a motion to be added as parties in order to assert their rights as grandparents pursuant to R.C.3109.051. The same day, the trial court granted appellees ex parte motion for temporary custody of the child.
On November 17, 1995, appellant filed a Motion to Set Aside and/or Modify the Ex Parte Order of September 12, 1995, which granted temporary custody of her son to appellees. In a December 13, 1995 Judgment Entry, the trial court set aside the September 12, 1995 Temporary Order, but immediately issued a new temporary order granting custody to appellees. On January 19, 1996, the trial court ordered appellant be granted unsupervised visitation with the child on Tuesdays, Thursdays, and Saturdays.
On April 9, 1996, the parties entered into an Agreed Judgment Entry. The parties agreed appellees would assume temporary legal custody of the child for a period of six months, so appellant would have an opportunity to provide a more stable environment for her son before assuming custody. Appellant agreed to use her best efforts to encourage her then-fiancee, Michael Jonas, to become a better role model. Appellant agreed to encourage his attendance at counseling, and a parenting class. Appellant also agreed to maintain health and automobile insurance at all times, and to notify appellees of all changes in her employment. The Agreed Entry also established a visitation schedule for appellant and the father, Shane Huck.
At the expiration of the six month term, appellant was not in a position to resume custody of her son. Accordingly, on September 10, 1996, the parties entered into a new Agreed Judgment Entry, which extended the terms of the previous agreed entry in full force and effect until June 1, 1997. Because appellant had terminated her relationship with her fiancee_, Michael Jonas, all reference to Mr. Jonas in the original entry was deleted.
On January 30, 1997, appellant filed a motion for contempt for appellees failure to comply with the visitation schedule. Further, appellant moved for an order terminating the temporary custody granted to appellees. Appellant claimed she had substantially fulfilled all conditions of the Agreed Entries and was, therefore, requesting custody of her child. In an April 24, 1997 Magistrate's Order, temporary custody was continued with appellees.
On July 3, 1997, appellees filed a Motion for Contempt, alleging appellant had failed to pay child support and a cross motion requesting legal custody of the child. The matter proceeded to trial on May 19, 1997, and September 2, 1997, on appellant's motion for legal custody and appellee's cross-motion for legal custody. In a February 4, 1998 Judgment Entry, the trial court designated appellees as the child's legal custodians. The trial court noted it had jurisdiction over the action pursuant to R.C. 2301.03(5), and awarded custody pursuant to R.C.3109.04(D)(2).
On December 4, 1998, appellant filed her motion for reallocation of parental rights. The matter proceeded to an oral hearing before the magistrate on May 27, 1999, and August 13, 1999.
On February 8, 2000, the magistrate filed a Decision, detailing the testimony provided in the May 27, and August 13, 1999 hearings. The magistrate found the appropriate standard to apply was the best interest of the child as set forth in R.C. 3109.04(E)(1)(a). After applying the standard, the magistrate denied appellant's motion for reallocation of parental rights.
Appellant filed objections to the magistrate's decision. In a February 28, 2001 Judgment Entry, the trial court overruled appellant's objections. In so doing, the trial court ordered continued custody with appellees. It is from this Judgment appellant prosecutes her appeal assigning the following error for our review:
 IT IS ERROR TO DETERMINE CUSTODY BETWEEN A PARENT AND A NON-PARENT ON THE BEST INTEREST BASIS SET FORTH IN 3019.04 [SIC] OHIO REVISED CODE.
 I
The question before this court is whether it is contrary to law for a trial court to proceed under the `best interest of the child' test enunciated in R.C. 3109.04, when the parent requesting a change in custody has previously consented to a grant of temporary custody of her child to the maternal grandparents, and when the original grant of temporary custody arose out of a parentage action. We acknowledge the law in this area is not clear. We find, under the circumstances presented in the matter sub judice, the trial court erred in failing to apply the suitability test. Our reasons follow.
The United States Supreme Court has recognized parents have fundamental rights to conceive and raise their children:
 The rights to conceive and to raise one's children have been deemed `essential,' `basic civil rights of man,' and `[r]ights far more precious * * * than property rights.' `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'[1]
Those rights have "found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment."[2] In Quilloin v. Walcott[3], the United States Supreme Court found the right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit:
 We have little doubt that the Due Process Clause would be offended `if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.'[4]
Child custody disputes under Ohio law fall within the coverage of one of two statutes, depending upon the circumstances. They are R.C. 3109.04
and R.C. 2151.23.[5] The distinction has proven critical to the application of the appropriate test in determining custody between a parent and a non-parent.[6]
The first statute under which a child custody dispute may fall is R.C.3109.04. Its primary purpose is to provide guidance to domestic relations courts for the allocation of parental rights and responsibilities between divorcing parents.[7] However R.C.3109.04(D)(2), permits a domestic relations court, under certain circumstances, to award custody of children of divorcing parents to a relative of the children other than one of the parents. Pursuant to R.C. 3109.04(D)(2), custody may be awarded to a relative other than a parent when it is in the best interest of the child:
 If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child * * *.
The second statute, R.C. 2151.23, gives juvenile courts exclusive jurisdiction to "determine the custody of any child not a ward of another court of this state."[8] There is no provision of the Ohio Revised Code that provides a standard for a juvenile court to apply in determining custody disputes that fall within the jurisdiction provided by R.C. 2151.23(A)(2).[9]
In the matter sub judice, the magistrate specifically applied the best interest of the child test pursuant to R.C. 3109.04(D)(2). Appellant herein does not challenge that finding. Rather, she argues the trial court erred in failing to find she was unsuitable pursuant to In RePerales.[10] After examining the case law controlling this issue, we agree the trial court was first required to find appellant was unsuitable before granting custody to appellees. A review of the relevant law follows.
In Boyer v. Boyer[11], the Ohio Supreme Court determined a court could commit a minor child to a relative, even though the court found the parents to be suitable. In Boyer, the parents left their minor child with the paternal grandparents because their work in a carnival kept them on the road. When the mother returned for her child, the grandparents refused to return the child. The grandparents initiated a petition for adoption with the probate court, however, the petition was dismissed because the parents did not consent to the adoption. While the adoption was pending, the child's parents were granted an uncontested divorce, and the custody of the child was determined by the domestic relations court. The trial court awarded custody to the grandparents, but did not find that the mother was unfit or unsuitable to have custody:
 `I am not making a finding that either party is unfit to have custody of this child, I am saying that it is for the best interest of the child to make this order.'[12]
Mother argued the trial court erred in applying the "best interest of the child" test set forth in R.C. 3109.04 where Civ. R. 75(P) required a trial court to make a finding of unsuitability before a child could be committed to a non-parent.[13] The Ohio Supreme Court disagreed and affirmed the judgment of the trial court, holding:
 In determining who shall have the care, custody, and control of a child under 18 years of age, even though the child's parents are not found to be unfit or unsuitable, the court may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child. (R.C. 3109.04 construed).[14]
In so holding, the Court first found R.C. 3109.04 controlled over Civ.R. 75.[15]
The year following the Boyer decision, the Ohio Supreme Court, in In rePerales[16], considered a child custody dispute between a parent and a non-parent under R.C. 2151.23(A)(2).
In Perales, Mother gave custody of her infant to a nonparent, nonrelative because she feared her husband would harm the infant. When Mother asked for the return of her child, the nonparent refused. Mother filed a complaint in the Juvenile Court. The Juvenile Court awarded custody of the child to the nonparent based upon the factors set forth in R.C. 3109.04, and the "best interests of the child." Mother appealed. The appellate court determined the trial court erred in failing to make a finding of unsuitability. The issue before the Ohio Supreme Court was whether the Juvenile Court properly awarded custody of the child to a nonparent without first finding the parent unsuitable.
The Ohio Supreme Court determined the trial court had improperly relied upon R.C. 3109.04. The Supreme Court reasoned because the statute deals with custody disputes arising out of divorces, the opposing parties are usually the child's parents. Since both parents have a right to custody, those conflicting rights cancel each other out, and the best interest of the child is the appropriate test in the determination of custody. However, actions under R.C. 2151.23(A)(2) between parents and nonparents, are different:
 Although divorce custody proceedings involving disputes between two parents are logically best served by looking only to the welfare of the child, the court's scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child."[17].
After determining the proper test for custody disputes in non-divorce settings was the suitability test, the Supreme Court addressed the best interest test applied in Boyer, supra, essentially merging the two tests.[18] The court cited Clark v. Bayer[19], in which, it had made "[t]he major statement * * * on the custody rights of a parent and a nonparent."[20] The Court noted although Clark required "the welfare of the minor is first to be considered" in child custody disputes, it had also determined in Clark that "parents who are `suitable' persons have a `paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children."[21] The In Re Perales
Court explained by limiting the reasons for which a parent could be denied custody, the Clark decision had specifically provided for the interests of the parent:
 We find, based on the concern displayed in the Clark opinion for balancing the interests of both parent and child, that parents may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable — that is, that an award of custody would be detrimental to the child.[22]
Further, the Perales Court clarified the passage in the Boyer opinion which had endorsed the notion a parent's right to custody must give way to a child's best interest:
 It is the last criteria [sic], other unsuitability, which allows the court to balance the interests of parent and child and avoid operating under the premise criticized in Boyer * * *, that `the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other.' (Emphasis added.) If courts dealing with the general concept of suitability measure it in terms of the harmful effect of the custody on the child, rather than in terms of society's judgment of the parent, the welfare of the child should be given the priority which is called for in the Clark opinion.[23]
Properly viewed, therefore, the right of a parent is not in conflict with the right of a child. It is in the best interest of a child to be in the custody of a suitable parent.[24] Accordingly, the Perales court held:
 In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability, that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.[25]
Ten years later, the Supreme Court addressed the issue again in Masittov. Masitto.[26] In Masitto, Mother's heart stopped while giving birth to the child, causing Mother to suffer severe brain damage. Thereafter, Mother required constant care. Father placed Mother and the child with the maternal grandparents while he worked, bringing his family home at night. After a year and a half of this arrangement, Father consented to the appointment of the maternal grandparents as guardians of his child and Mother. Two years later, Father was granted a divorce in which the decree referenced the guardianship of his child with the maternal grandparents. Father filed for a change of custody and the trial court denied the request after applying the best interest of the child test. The trial court cited findings of fact, including:
(6) the father is a fit person to have custody;
 (7) [t]he father specifically relinquished custody, control and guardianship by signing the consent in Probate Court and consenting to the journal entry of divorce in this Court[.]
The Court of Appeals reversed, finding the trial court failed to apply the suitability test. The Ohio Supreme Court had to "determine the effect of a parent consenting both to his child's status as a ward, and to a divorce decree which, in essence, incorporated the guardianship appointment, on the trial court's choice of the proper test: parents' suitability versus the child's best interest."[27]
Because the custody dispute arose out of a divorce, one might expect the Supreme Court would have applied the Boyer syllabus and the `best interest' test set forth in 3109.04 as set forth, supra. While the Court did apply the best interest test,[28] it did so only after first applying the suitability test announced in Perales.
The Masitto Court first set forth the general rules in Ohio regarding custody awards between a parent and a nonparent:
 * * * parents who are `suitable' persons have a `paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children. However, once an original custody award has been made, the general rule is that such award will not be modified unless "necessary to serve the best interest of the child."[29]
We find it especially interesting that even after stating these general rules, and even though an initial grant of custody had been made inMasitto, the Supreme Court first looked to suitability. From this we deduce the general rule applying the best interest test once an original custody award has been made, does not apply if an initial determination of parental unsuitability was not made therein.[30] The Court noted under the law pronounced in Perales, a parent may be found to be unsuitable if he or she contracted away custody rights of their minor child:
 Whether or not a parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable credible evidence to support the finding. The trial court made such a determination here.
* * *
 The appellate court reasoned that this father did not totally relinquish his custodial rights, and could thereby still be considered "suitable," because he paid support and exercised his visitation rights. * * * Under all the facts here, we hold that by consenting to the guardianship and divorce decree, the father forfeited his natural rights to custody of his daughter, making the child's best interest the appropriate test for a change in custody.[31]
In other words, the Supreme Court found the application of the best interest test for a change of custody determination to be appropriateonly after it had applied the suitability test from Perales, and found the parent unsuitable.
Initially, we note the matter sub judice did not arise out of a divorce decree and did not arise under R.C. 2151.53, so neither Boyer norPerales appear to directly control the outcome. However, after considering the law as set forth above, we find the trial court erred in failing to first apply the suitability test.
In the matter sub judice, the trial court determined the best interest test was applicable because no appeal was taken from the original custody determination in the February 4, 1998 Judgment Entry. Because the issue before the trial court was a change in custody, as opposed to the original grant of custody, the trial court found R.C. 3109.04 was applicable. For the same reasons advanced in our analysis of Masitto, a case which also reviewed a denial of a motion for a change of custody, we cannot agree.
Unlike Masitto, supra, the trial court in the matter sub judice made no specific finding appellant was unsuitable. In fact, the trial court states:
 It appears to the Court that the [appellant] has made great strides since these proceedings were initiated approximately four and a half years earlier.
* * *
 It would further appear from this hearing that [appellant] basically had complied with the requirements in the agree[d] entries as previously set forth.[32]
The trial court also states:
 Since these proceedings started in 1996, there has been an agreement on the part of the plaintiff to effectively contracted [sic] or voluntarily placed [sic] this child in the temporary custody of the third-party defendants.[33]
At no time does the trial court make a finding appellant is unsuitable, or that appellant's relinquishment of temporary custody satisfied the unsuitability standard announced in Perales. In fact, the trial court noted the agreed temporary custody orders, in each instance, specifically contemplated the reunification of parent and child through full custody, after appellant had complied with certain requirements.[34]
In In re Custody of Carpenter[35], the Second District Court of Appeals reviewed a case where the parents agreed to grant temporary custody of their child to the maternal grandparents. The Court of Appeals held orders of temporary custody cannot constitute abandonment to satisfy the unsuitability test announce in Perales:
 * * * The parent, being the natural custodian of the child, starts with the benefit of the preferential considerations mandated by in re Perales, supra, as a natural right. The parent should only be deemed to have surrendered his natural right to preferential treatment vis-a-vis a non-parent if he does so knowingly and intelligently. An agreement to surrender temporary custody is not a knowing and intelligent surrender of the parent's natural right to preferential treatment in a subsequent determination of custody.[36]
We agree with the Second District.
Accordingly, we find appellant's agreement to grant temporary custody of her child was ineffective as a matter of law to relinquish her natural right to preferential treatment in a custody dispute between her and a non-parent. As noted supra, each temporary custody agreement in the matter sub judice specifically contemplated a return of custody to appellant. Appellees cannot now assert appellant's agreement to temporary custody was sufficient to constitute a relinquishment of her natural right to custody as discussed in Perales, supra and Masitto, supra.
Appellant's sole assignment of error is sustained. Because we find the trial court erred in failing to apply the suitability test as set forth in Perales and Masitto, supra, we reverse the February 28, 2001 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division, and remand this matter to the trial court for further proceedings consistent with our opinion and law.
By: HOFFMAN, J., GWIN, P.J. and FARMER, J. concur
[1] Prince v. Massachusetts, 321 U.S. 158, 166 [64 S.Ct. 438, 442,88 L.Ed. 645, 652-653] (1944)." (Citations omitted.) Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551,558-559.
[2] Id. at 651, 92 S.Ct. at 1213, 31 L.Ed.2d at 559 (Citations omitted).
[3] Quilloin v. Walcott (1978), 434 U.S. 246, 98 S.Ct. 549,54 L.Ed.2d 511.
[4] Id. at 255, 98 S.Ct. at 555, 54 L.Ed.2d at 520, quoting Smith v.Org. of Foster Families (1977), 431 U.S. 816, 862-863, 97 S.Ct. 2094,2119, 53 L.Ed.2d 14, 46-47 (Stewart, J., concurring in judgment); see,In re Schoeppner (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 13-14,345 N.E.2d 608, 610.
[5] Baker v. Baker (1996), 113 Ohio App.3d 805, 808.
[6] See, Reynolds v. Goll (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276;In Re Perales, supra; Boyer v. Boyer (1976), 46 Ohio St.2d 83.
[7] R.C. 3109.04.
[8] R.C. 2151.21(A)(2).
[9] Baker, supra at 809.
[10] In Re Perales (1977), 52 Ohio St.2d 89.
[11] Boyer v. Boyer (1976), 46 Ohio St.2d 83, 75 O.O.2d 156,346 N.E.2d 286
[12] Id. at 84, quoting the trial court.
[13] Civ. R. 75 provides, in relevant part:
 If the court finds, with respect to any child under eighteen years of age, that neither parent is a suitable person to have custody, it may commit the child to any other relative of the child * * *
"At the time the Civil Rules were promulgated, R.C. 3109.04 and Civ.R. 75(P), where pertinent, were identical." Boyer, supra at 85.
[14] Id. at paragraph one of the syllabus.
[15] Id., at 86; The Court reasoned when, pursuant to R.C. 3109.04, a parent's right to custody of his or her child conflicts with the best interest of that child, the parent's right must give way:
 Children and parents of those children, stand equal before the law. They are entitled to protection from and by the law. Appellant's basic premise, that the parents have a right to custody which transcends consideration of the child's best interest, is recognition that the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other. Id. at 87.
[16] In Re Perales, supra.
[17] Id. at 96.
[18] See Baker, supra.
[19] Clark v. Baker (1877), 32 Ohio St. 299.
[20] Perales, supra.
[21] Id. at 97.
[22] Id. at 98.
[23] Id.
[24] Baker, supra at 812.
[25] Perales, supra, syllabus.
[26] Masitto v. Masitto (1986), 22 Ohio St.3d 63.
[27] Id. at 65.
[28] Id. at 67.
[29] In re Perales, supra at 97. (Footnote omitted).
[30] We also find it noteworthy the Masitto court deleted reference to the Clark, Perales court "detrimental to the child" prong as a basis for a finding of unsuitability.
[31] Id. at 66. (Citations omitted).
[32] February 28, 2001 Judgment Entry at 5.
[33] Id. at 7-8.
[34] Id. at 2.
[35] In re: Custody of Carpenter (1987), 41 Ohio App.3d 182.
[36] Id. at 185.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the February 28, 2001 Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division, is reversed and this case is remanded to the trial court for further proceedings consistent with our opinion and law.