DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Audra Ives, natural mother of the minor children, appeals from the decision of the Lorain County Court of Common Pleas, Juvenile Division, which adjudicated her an unsuitable parent and awarded custody of the minor children to Appellees, Judith ("Judith") and Warren Ives, paternal grandparents of the children. We affirm.
 {¶ 2} On October 30, 2001, Brian Ives ("Brian"), father of the minor children, filed a complaint for legal custody and an ex parte motion for emergency custody. That same day, the trial court granted the father's motion. Thereafter, Appellant was granted supervised visitation rights with the children. A hearing was then held regarding the reversal of the emergency temporary custody order. The court found that temporary custody was providently granted and was to remain in effect.
 {¶ 3} On November 28, 2001, Appellant filed a motion for emergency temporary custody and Appellees filed a combined motion to intervene and a motion for legal custody. Shortly thereafter, Appellees also filed a motion for emergency temporary custody and for temporary and/or legal custody. A hearing was held and the court granted emergency temporary custody to Appellees. Consequently, Appellant's motion for emergency temporary custody was denied.
 {¶ 4} Thereafter, on December 14, 2001, Brian withdrew his motion for legal custody. Appellant then filed a second motion for custody. A hearing was held and on October 2, 2002, the court granted legal custody of the children to Appellees. It is from this decision that Appellant appeals raising five assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court erred in granting legal custody of the minor children * * * to [Appellees] in that the court did not grant their motion to intervene prior to granting them legal custody of the aforesaid minor children, and, further, [Appellees] did not have a right to intervene in the instant case."
 {¶ 5} In her first assignment of error, Appellant maintains that the trial court erred in awarding legal custody of the minor children to Appellees because the court did not previously grant Appellees' motion to intervene. Appellant's assignment of error lacks merit.
 {¶ 6} In the present case, Appellees filed a "Motion to Intervene and for Legal Custody[.]" Thereafter they filed a combined "Motion for Emergency Temporary Custody of Minor Children and for Temporary and/or Legal Custody[.]" These motions were based on Appellees' concerns regarding Appellant's parenting abilities. In their motion and accompanying affidavit, Appellees included examples suggesting that the minor children may be abused, neglected, or dependent. Upon conducting a hearing, the trial court granted Appellees legal custody of the minor children. The motion to intervene was not expressly ruled on.
 {¶ 7} Pursuant to R.C. 2151.27(A)(1), any person having knowledge of a child which appears to be abused, neglected, or dependent, may a file a complaint with respect to that child. Furthermore, R.C.2151.23(A)(2) grants the juvenile court exclusive, original jurisdiction over the determination of "the custody of any child not a ward of another court of this state[,]" including disputes between parents and non-parents. See In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, at ¶ 15; In re Daily, 4th Dist. No. 02CA31, 2003-Ohio-787, at ¶ 6. As such, it was not necessary for Appellees to have been granted intervener status in order to assert their petition for legal custody of the minor children. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in granting permanent custody to [Appellees] in that the trial court did not comply with [R.C.] 2151.353(B)."
 {¶ 8} In her second assignment of error, Appellant alleges that the court did not comply with R.C. 2151.353(B) when granting permanentcustody of the minor children to Appellees. However, Appellant is mistaken, as a review of the journal entry reveals that the trial court granted only legal custody of the children to Appellees. Thus, Appellant's argument must fail.
 {¶ 9} Legal custody and permanent custody are two very different legal statuses. Whereas "legal custody" is a "status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child * * * all subject to any residual parental rights, privileges, and responsibilities[,]" "permanent custody" is a legal status that "vests in a public children servicesagency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(14) and (23). In the present case, the trial court held that "it would be in the children's best interest to be placed in the legal custody of [Appellees.]" Accordingly, Appellant's assertions that the trial court erred in granting permanent custody need not be further addressed.
 ASSIGNMENT OF ERROR III
"The trial court erred in failing to apply the mandatory best interest factors set forth in [R.C.] 3109.04(F)(1) in determining the allocation of parental rights and responsibilities of the minor children in the case before the court."
 {¶ 10} In her third assignment of error, Appellant asserts that the trial court committed error when it failed to apply the best interest test outlined in R.C. 3109.04(F)(1). Appellant's assertion is not well taken.
 {¶ 11} Based on the varying circumstances involved, under Ohio law, child custody determinations are covered by one of two statutes. Inre Hockstock at ¶ 13; Baker v. Baker (1996), 113 Ohio App.3d 805,808. R.C. 3109.04, which is part of Ohio's domestic relations law, provides guidance to domestic relations courts when allocating parental rights and responsibilities between divorcing parents. In re Hockstock at ¶ 14; Baker, 113 Ohio App.3d at 809. Under this provision, a court may award custody of a minor child to a relative, other than the natural parents, if it is found to be in the best interest of the child. R.C.3109.04(D)(2).
 {¶ 12} Child custody disputes are also covered by R.C.2151.23(A)(2), which grants juvenile courts exclusive, original jurisdiction "to determine the custody of any child not a ward of another court of this state[.]" See, also, In re Hokstock at ¶ 15; Baker,113 Ohio App.3d at 809. This Court has recognized that "[t]here is no provision of the Ohio Revised Code that provides a standard for a juvenile court to apply in determining custody disputes that fall within the jurisdiction provided by R.C. 2151.23(A)(2)." Baker,113 Ohio App.3d at 809. Thus, Ohio case law has provided a framework to guide juvenile courts in these instances.
 {¶ 13} Although custody proceedings involving disputes between parents are best served by looking solely at the welfare or best interests of the child, "the court's scope of inquiry must, of necessity, be broader in R.C. 2151.23(A) custody proceedings between a parent and a nonparent, which bring into play the right of the parent to rear his own child." Id. at 810, citing In re Perales (1977), 52 Ohio St.2d 89, 96. The fundamental rights of a parent are effectuated by severely limiting the circumstances under which a parent may be denied custody of their minor children. Hockstock at ¶ 17, citing In re Perales,52 Ohio St.2d 89 at syllabus. Therefore, in these instances, there must be a finding of parental unsuitability before child custody can be awarded to a nonparent. Hockstock at ¶ 18. See Baker,113 Ohio App.3d at 811. Suitability or lack thereof, essentially measures the harmful effect of the custody on a child. Baker, 113 Ohio App.3d at 811. As a child's best interest would not be served in the custody of an unsuitable parent, Ohio law has thus "melded the best-interest-of-the-child test with the suitability-of-the-parent `test.'" Id.
{¶ 14} In this case, the trial court specifically found,
"by a preponderance of the evidence[,] that neither [Appellant] or the Father of the minor children * * * is suitable to parent the minor children[.] Further, that said award of custody would be detrimental to the children. Upon finding [Appellant] and Father not suitable as residential parents and/or legal custodian of the minor children, the court finds that it would be in the children's best interest to be placed in the legal custody of [Appellees]."
 {¶ 15} The trial court correctly determined that this action fell within the coverage of R.C. 2151.23(A) rather than R.C. 3109.04 and then proceeded to conduct a determination of parental suitability. Since the court found that both Appellant and the father are unsuitable to have custody, we cannot say the court erred in determining the allocation of the parental rights and responsibilities of the minor children. Accordingly, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred in finding that [Appellant] was not suitable to parent her minor children in that said determination was not supported by a preponderance of evidence in order to permit the trial court to divest Appellant * * * of custody of her children."
 {¶ 16} In her fourth assignment of error, Appellant contends that the trial court's determination of unsuitability was not supported by a preponderance of the evidence. We disagree.
 {¶ 17} A trial court maintains broad discretion in child custody matters and may only be reversed upon a showing of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. See, also,Smith v. Smith, 9th Dist. No. 01CA0036, 2002-Ohio-223, at 3-4, citingMiller v. Miller (1988), 37 Ohio St.3d 71, 74. An abuse of discretion is more than an error of law or judgment and "implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 18} An appellate court's role is to ascertain "whether the award of custody is supported by a substantial amount of credible and competent evidence." Poulton v. Poulton (Feb. 7, 2001), 9th Dist. No. 3056-M, at 3, citing Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. A trial court's decision is afforded "the utmost respect" as the trial court is better equipped to weigh the evidence due to the knowledge gained through the observation of witnesses throughout the custody proceedings. Smith, supra, at 3-4, citing Miller, 37 Ohio St.3d at 74.
 {¶ 19} A determination of unsuitability is to be supported by a preponderance of the evidence. Hockstock at ¶ 17, citing In rePerales, 52 Ohio St.2d 89 at syllabus. If a court concludes that a parent abandoned the child, contractually relinquished custody of the child, became totally incapable of supporting or caring for the child, or that parental custody would be detrimental to the child, the parent may be adjudged unsuitable. Hocking at ¶ 17, citing In re Perales,52 Ohio St.2d 89 at syllabus. We note that "detriment" to a child includes not only the physical and mental effects a custody award may have on a child, but also the emotional and psychological effects as well. See Baker, 113 Ohio App.3d at 811, citing In re Perales,52 Ohio St.2d at 98, fn. 11.
 {¶ 20} There are two minor children at issue in the present case: S.I., who was born August 28, 2000, and J.I., born September 20, 2001. At trial evidence was presented regarding the care the minor children received while in the custody of Appellant. Ann Forster ("Nurse Forster"), a pediatric nurse practitioner, testified that she first examined S.I. on November 12, 2001, when Appellees brought her into the office. She indicated that although the child was in relatively good health, she was "severely behind in immunizations" and poor weight gain was noted. Nurse Forster explained that Appellant and S.I. had visited the office on February 1, 2001 and the child was to have a follow-up visit in one week due to her bronchiolitis; S.I. was given a nebulizer and Nurse Forster indicated that it is important to closely monitor a child receiving such treatment. She asserted that complications resulting in hospitalization may arise if a child is not properly monitored. J.I. was first examined on October 29, 2001; he was six weeks old at the time. Nurse Forster stated that newborns should have an office visit within one to two weeks of birth, and then on a monthly basis thereafter.
 {¶ 21} Evidence was also presented regarding repeated and violent outbursts of Appellant. Shawn Stephenson ("Stephenson"), son of Appellees and brother of Brian, testified that Appellant and Brian had a "volatile marriage." He stated that when Brian was living with him and his girlfriend, Appellant often engaged in harassing and threatening behavior. Appellant would call multiple times a day, at all hours of the day, and would make threatening statements towards Brian. Stephenson recalled hearing Appellant remark that Brian "should realize how easy it is to get hurt[.]" Stephenson alleged that Brian had even indicated that Appellant had "stabbed" him during a past incident.
 {¶ 22} Rochelle McEntee ("McEntee"), Stephenson's girlfriend, also recalled receiving numerous harassing telephone calls from Appellant. McEntee explained that Appellant often became belligerent during these calls and would threaten Brian. When asked to cease the phone calls, McEntee explained that Appellant would become even more irate and vulgar. In McEntee's opinion, neither Appellant nor Brian is able to provide adequate care for the children.
 {¶ 23} Judith testified that Appellant had often become "verbally abusive" and argumentative with her, in front of the children, while taking part in the supervised visitation meetings at Appellees' home. Judith maintained that on one occasion, Appellant had shoved S.I. towards her in a "harsh manner" and had even struck Judith in the chest with her car door, asserting that she should have "run over [Judith], too." Judith stated that she always had to keep her doors locked because Appellant and her mother would often come over and "beat on the doors and windows and scream at [Appellees]." Judith also recalled seeing wounds on Brian from the time that Appellant allegedly "stabbed" him when he stated he was going to visit with Appellees. She explained that Appellant would not permit Appellees to spend time with the children. Judith also testified that in October of 2001, Appellant struck Brian with her van "pinn[ing] his knees" to the ground. Brian was taken to the hospital in order to receive treatment for the resulting lacerations and bruising. Judith stated that the children were in the van during this occurrence.
 {¶ 24} Additionally, Judith testified about her concerns relating to the various letters Appellant had written to Brian. In a letter dated August, 2001, Appellant threatened Brian stating that "[i]f [he] ever get[s] any bright ideas of walking out on [her] and the children, [he] [would not] be around long enough for him to hurt [her.]" She indicated that she had "people [she could] call and things will get done." Two months later, Appellant struck Brian with her van. The following night, at 1:30 a.m., Appellant left the children with Brian, who was living with Appellees at the time. Inside a duffel bag was a note which read "Here you go coward. See how long you last as a father. You walked out on them before after only [five] months. I give you [three] months." Appellant also provided Brian with feeding instructions for the children. Upon reading the note, Judith stated that she assumed Appellant was leaving the children with Brian indefinitely and did not want to care for them anymore. Appellant simply indicated in her note that she would call when she was through receiving "the help that [she] need[ed]." Judith testified that J.I. was still being breast-fed when Appellant left the children and it was a struggle transferring him to formula.
 {¶ 25} Judith stated that the children were currently residing with her in accordance with the temporary custody order. She asserted that Appellant had not provided her with any child support payments, food stamp coupons, or medical insurance cards as requested. Judith explained that she and her husband were seeking legal custody because of Appellant's violent nature and inability to control her temper. She testified that she was concerned for the well-being of the children.
 {¶ 26} Friends, Angela and John Dove and Sandra Dahlke, and relatives Erica Goe, and Charles Goe ("Goe") asserted that Appellant was a loving mother. Each testified that Appellant would adequately feed, clothe, and care for her children and could not think of any reasons why Appellant should not be given custody. Furthermore, Appellant's father, Goe, stated that although Appellant would have a "hard" time supporting herself and the two children, he was willing to assist her with their financial and medical needs.
 {¶ 27} Lastly, Appellant testified at the custody hearing. Appellant stated that she has not been employed for the past two years. However, she is currently receiving assistance and maintained that she will begin working at an answering service when the custody proceedings are terminated. Appellant offered explanations for her volatile behavior and the lack of proper immunizations of her children. Appellant alleged that after S.I.'s first doctor's visit, she changed pediatricians due to insurance coverage reasons. She stated that S.I. had her second set of immunizations and had a "violent reaction" which consisted of bodily hives and a fever. Appellant further stated that after speaking with an R.N., she decided to postpone the remaining immunizations until S.I. was of an age where she would be able to tolerate them. Appellant testified that she scheduled a doctor's appointment for J.I. six weeks after his birth. Contrary to Nurse Forster's recommendations, Appellant asserted that a newborn did not require an office visit until he was six weeks of age.
 {¶ 28} Appellant stated that she accidentally struck Brian with her van and was sorry. She maintained that the children were not in the vehicle with her at the time the incident occurred. Appellant explained that she was emotionally troubled throughout these times and would express these feelings in her writings to Brian. She asserted that she still loved Brian and her perceived threats were merely sarcastic statements. Appellant further asserted that she did not leave the children with Brian indefinitely. She declared that it was intended to be a one-night stay while she was receiving "help" for her emotional problems. Appellant also offered an explanation for her visitation violations; she was unaware the visits were to be supervised at all times and thought monitoring via telephone would satisfy the requirements.
 {¶ 29} Upon reviewing the record provided in the instant appeal, we are unable to conclude that the trial court committed error in its determination that continued custody with Appellant would be detrimental to the children. Clearly there is a substantial amount of credible and competent evidence to support the court's finding. This is not an instance where the court's attitude was unreasonable, arbitrary or unconscionable. Accordingly, Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
"The trial court erred in that it failed to make a dispositional order as requested by [Appellees] in their motion for legal custody pursuant to [R.C.] 2151.353 * * * and failed as part of said dispositional order to utilize and journalize a case plan for the minor children in accordance with [R.C.] 2151.353(D)."
 {¶ 30} In her fifth assignment of error, Appellant argues that the trial court committed error in failing to journalize a case plan pursuant to R.C. 2151.353(D). Appellant's argument lacks merit.
 {¶ 31} Appellant correctly asserts that as a part of its dispositional order, a court is to journalize a case plan for the minor children "[i]f a child is adjudicated an abused, neglected, or dependent child[.]" R.C. 2151.353(A) and (D). However, this provision is inapplicable to the case at hand because the trial court did not adjudicate the minor children as abused, neglected, or dependent. Rather, the court found Appellant unsuitable to have custody of the children and determined that their best interests would be served by placing them in the legal custody of Appellees. The custody award was not based on a finding of abuse, neglect, or dependency. Thus, the provisions of R.C. 2151.353 are inapplicable as the trial court presumably granted custody to Appellees based on the authority granted in R.C. 2151.23(A)(2), under which a custody award is not based upon a dependency adjudication. See In re Dillon (Dec. 24, 1981), 4th Dist. No. 1499. Accordingly, Appellant's fifth assignment of error is overruled.
 {¶ 32} Appellant's assignments of error are overruled. The decision of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
BATCHELDER, J. CONCUR